# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## C. B. HARRIS AND PEARL M. HARRIS v. E. J. LIPSON AND CHEVALIER MORGAN.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*R. Dixon Powers* and *Stover H. Bowles*, for the plaintiffs in error.

*Allen G. Collins* and *Gross & Gross*, for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

E. J. Lipson, one of the defendants in error here, filed his petition for a judgment against the plaintiffs in error, C. B. Harris and Pearl M. Harris, and ancillary to said proceedings he prayed for an attachment to issue against the real and personal estate of the defendants and specifically against certain described real property.

The record here does not present a complete transcript of the record in the attachment proceedings. It includes the petition for the attachment, the attachment bond, and the attachment writ with the officer's return thereon, showing only personal service on the principal defendants and the co-defendants therein named. The petitioner, however, admits that an affidavit of substantial defense was filed, and that the attachment writ was quashed by the trial court on the ground that it was sued out without sufficient cause. The pleadings in this case show that that case proceeded to final judgment, and judgment was recovered by the creditor for the full amount claimed.

The sheriff made no endorsement whatever in his return on the attachment writ with reference to a levy on the real estate. There is nothing to indicate why such levy was not made, except it be that the attachment proceeding was quashed before an opportunity was allowed to make the levy. The personal service of the writ of attachment was sufficient to hold the sum of sixty dollars in the hands of a co-defendant until the writ was quashed.

Lipson, at the same time, also filed a *lis pendens* against the

real estate based on the attachment proceedings. The attachment bond executed by E. J. Lipson, as principal, and Chevalier Morgan, as surety, was conditioned to pay all costs and damages which might be awarded against E. J. Lipson, or sustained by any person by reason of his suing out the said attachment.

After the conclusion of the original proceeding, and after judgment therein for Lipson, plaintiffs in error here, whom we will hereafter term plaintiffs, brought this action on the bond, claiming that they had been damaged by reason of the wrongful suing out of the attachment.

It appeared also that the plaintiffs herein had another action pending against the defendant, Lipson, for alleged damages resulting from the suing out of the identical attachment, but we are left in the dark as to its disposition.

When the case before us came on for trial, the court required the plaintiffs to elect whether they would proceed in tort, or on the bond, and the plaintiffs elected to proceed on the bond.

There is no allegation in the plaintiffs' notice of motion that the writ of attachment was sued out wantonly or maliciously, or with a wilful design to oppress, harass and vex the debtor. There is a simple allegation that it was wrongfully sued out.

At the trial, the plaintiffs offered to prove that information of the issuance of the attachment having come to the knowledge of a person with whom they had a valid written contract for a trade of the property for another piece of property, the latter refused to carry out and complete the trade.

The trial court allowed the plaintiffs to introduce evidence as to the holding of the personal property in the hands of a co-defendant, by reason of personal service of the writ of attachment, and instructed the jury that the plaintiffs could recover nothing except the legal interest on said sum for the period for which it was held by the attachment. It refused to permit the plaintiffs to introduce any evidence as to the real estate trade, or the filing of a *lis pendens*, or the alleged loss resulting from the failure of the contract of trade, on the ground that there had been no levy of the attachment on the

real estate, and that consequently the attachment had not been sued out against any real estate.

Upon the evidence admitted and under the instructions of the court, the jury found for the plaintiffs, in the sum of seventy-three cents, being six per cent. interest on the sum of sixty dollars for the time that sum was held by reason of the attachment.

There are three assignments of error, all of which are based upon the same point, that is, the refusal of the trial court to permit the plaintiffs to introduce evidence as to the failure of the real estate trade and of the filing of a *lis pendens*.

It needs no citation of authority to hold that the mere issuance of an attachment under Virginia Code 1936, sections 6386-6393, creates no lien on the real estate. In order to create a lien, it is necessary for the officer to cause his return to show that he made a levy, and for the return to mention and describe the real property with such substantial accuracy as to cause it to be readily identified.

The direction in the writ to attach the real estate is merely a direction to the officer what to do, and unless the officer acts according to the directions in the writ and in accordance with the statutes, the writ constitutes neither an attachment nor a lien thereunder. The process is not of itself an attachment, but only becomes an attachment when it is properly executed. The court cannot acquire jurisdiction in the attachment proceedings over the real estate until a levy has been effected and a proper return thereof made. *Fauquier Nat. Bank* v. *Hazelwood Savings & Trust Co.*, 165 Va. 259, 182 S. E. 566; *Raub* v. *Otterback*, 92 Va. 517, 23 S. E. 883; *Robertson* v. *Hoge*, 83 Va. 124, 1 S. E. 667.

In the instant case, the real property was not touched by the sheriff, nor any misuse made thereof, nor the owner deprived of its custody and control. The issue of the writ of attachment affected neither the title to, nor control thereof, or in any manner prevented or interfered with anyone in dealing with it. A mere examination of the papers in the case would have disclosed this situation.

■ The giving of the bond created no damage, nor conferred any right to sue. It simply provided security for the payment of recoverable damages. The right to sue for damages on account of an attachment proceeding arises only when the property is levied on or taken without good cause, and damages result therefrom, or when there has been a malicious abuse of the process with resulting damage.

■ The Virginia statute presents two methods under which the officer may take possession of the property. The plaintiff may give a bond for such purpose at the time of suing out the attachment. (Code, section 6384.) Or he may follow the procedure adopted here, giving the bond under section 6385, after an affidavit has been made by the principal defendant that he has a substantial defense to the merits of the plaintiff's claim. In either event the bond is given for the purpose of protecting the defendant debtor from any damages incurred by reason of a wrongful seizure. The bond is only given when possession by the officer is desired. The levy can, of course, be made without giving a bond, but no seizure is required without one. The bond, therefore, becomes effective only when there has been the performance of an act for which it provides indemnity. The writ of attachment, before a levy thereof, has no more legal effect on the title or interest of the owner of the real estate than a mere summons or subpoena to appear in the proceedings.

■ The attachment bond does not provide against a mere suing out of the *writ* of attachment. It provides for damages only when the proceeding becomes an attachment, and then only when the proceeding has been instituted without good cause and damages have been suffered. There can be no remedy unless there has been a wrong.

In the case of *Davis* v. *Commonwealth ex rel. Leon*, 13 Gratt. (54 Va.) 139, 145, may be found a most interesting discussion of the history of attachment proceedings in Virginia. The opinion deals especially with the form and scope of attachment bonds, and construes the meaning of the words framing the conditions found in such bonds. These conditions

appear over a successive period of years in language without material change. Said Judge Moncure:

"The words 'for suing out such attachment,' in the bond,. prescribed by 1 Rev. Code 477, section 7; the words 'by reason of such attachment' in that prescribed by the act of February 24, 1827, Supp. R. C. page 240, section 1, and the words 'by reason of his suing out the attachment,' in the Code, page 602, section 8, are the same in meaning and effect; and all alike apply only to damages which legitimately result from the execution of the writ in pursuance of its mandate."

■ Virginia Code 1936, section 5783, should be read in connection with the attachment statutes *supra*. It provides:

"*For wrongful distress, etc.*—If property be distrained for any rent not due, or attached for any rent not accruing, or taken under any attachment sued out without good cause, the owner of such property may, in an action against the party suing out the warrant of distress or attachment, recover damages for the wrongful seizure, and also, if the property be sold, for the sale thereof."

■ It will be noted that this statute requires not only that the property be "taken" under the attachment, but that there must be the absence of good cause for issuing the attachment. The fact that the attachment was quashed on the ground that it was sued out without *sufficient cause* does not necessarily imply that there was lack of *good cause*. There is no evidence in the record as to whether or not there was *good cause*.

In the case of *Dunn & McCarthy, Inc.* v. *Pinkston, et al.* (Ga. App.), 187 S. E. 175, 177, decided July 9, 1936, where it was held that there had been no legal seizure by levy of the attachment on the property of the defendant, the court said:

"There having been no legal seizure of the property of the defendant in attachment either by levy or by garnishment, the attachment having been dissolved by the filing of a dissolution bond prior to the answers of the garnishee and of the defendant in attachment, and the case having proceeded thereafter as an ordinary suit at law, there is no liability on the attachment bond given by the principal and security therein to the defendant in attachment."

The court further said in that opinion, quoting from *Massa-chusetts Bonding, etc., Co.* v. *U. S. Conservation Co.*, 31 Ga. App. 716, 720, 122 S. E. 728, 730:

"The pendency of an ordinary common-law suit may act as a standing menace to the defendant and cause him irreparable damage for which he cannot recover. Upon such a suit, summons of garnishment may be issued from time to time, and yet no right of action would exist for any menacing effect which the pendency of such a suit, with the possibility of garnishment thereon, would have upon the defendant."

In *New York, etc., R. Co.* v. *Estill*, 147 U. S. 591, at page 607, 13 S. Ct. 444, 450, 37 L. Ed. 292, the court said:

"Writs of attachment were sued out in the suits, but no property was levied on, and hence the suits stand as if they had been instituted by summons alone."

The *lis pendens* in the attachment proceeding was merely a notice of the pendency of the suit to anyone interested and a warning that he should examine the proceedings therein to ascertain whether the title to the property was affected or not by such proceedings.

There is no reason shown here why the plaintiffs could not have compelled the enforcement of a valid written contract for the sale or transfer of their real property to a person bound by that contract, either during the pendency of the attachment proceedings or thereafter.

We think the trial court properly instructed the jury, that the plaintiff was only entitled to recover the legal rate of interest on the sum of money held under the lien of the attachment for the period during which the said sum was detained from the principal defendant in the attachment proceedings.

In view of our opinion as to the necessity of a wrongful levy to give ground for a recovery of damages, questions raised with reference to a mere suing out of the attachment, or to the time when sued out, are not in point. There was no attachment of the property. If there be no attachment, there can be no damages arising from same, and the issuance of the writ

of attachment, or the time of its issuance, is immaterial.

We find no error in the record.

The judgment of the trial court is affirmed.

*Affirmed.*