COMMONWEALTH TIRE COMPANY, *a corporation*

*v.*

TRI-STATE TIRE COMPANY, *a corporation*

(No. 13105)

Submitted October 10, 1972.    Decided December 19, 1972.

*Harry L. Hager*, for appellant.

*Carroll W. Casto, Maurice G. Taylor, Jr.*, for appellee.

BERRY, JUDGE:

The appellant, plaintiff below, Commonwealth Tire Company, appeals from a final order of the Circuit Court of Lincoln County on March 31, 1971 which overruled the appellant's motion to set aside a judgment which the court had rendered in favor of the appellee, Tri-State Tire Company, the defendant below, and to enter a judgment against the appellee, or in the alternative, to grant appellant a new trial. The appellant had originally brought an action to recover $5,778 that was owed to it by the appellee on open account for new tires that the appellant had sold to the appellee. The appellant had attached certain property of the appellee's on the grounds that the appellee was converting its property into money with the intent of defrauding its creditors. As a result, the appellee filed a counterclaim alleging that the affidavit filed in support of the appellant's attachment was false and further alleged that the appellant had secretly employed an employee of the appellee which resulted in irreparable damage to the appellee. The appellee demanded compensatory and punitive damages in its counterclaim. The case was tried without a jury and the trial court found in favor of the appellant in the amount of $5,778, but further found for the appellee in the amount of $6,000 for compensatory damages and $2,000 for exemplary damages, and thus entered judgment for the appellee in the amount of $2,222.

The appellant contends that the judgment in favor of the appellee was contrary to the evidence, that punitive damages were not justified in this case, that the appellee was not damaged by any conduct on the appellant's behalf, and that if there were any damages, the defendant failed to prove them with any degree of certainty.

The appellant's appeal was granted by this Court on June 28, 1971 and the case was submitted for decision on October 10, 1972 upon the arguments and briefs of the parties.

It appears from the record that the appellee, Tri-State Tire Company, began doing business in December of 1969 in Hamlin, West Virginia, as a wholesaler and retailer of tires and other automotive accessories. Mr. Ralph Johnson, the President of the Company and one-fourth owner, hired Mr. Gordon Moore as the manager of the store and as the route salesman for a compensation of $600 a month, plus expenses on the road. Mr. Moore sold primarily to service stations. Tri-State Tire Company had two main suppliers of tires, Commonwealth Tire Company, the appellant in this case, and Wholesale Tire Company. It appears from the record that Mr. Johnson in December of 1969, while President of Tri-State Tire, was employed by Commonwealth Tire Company and in January, 1970 he left the employment of Commonwealth and was employed by Wholesale Tire Company until about June 1, 1970.

Mr. Moore testified that he was led to believe by Mr. Johnson that he and Mr. Johnson were going to obtain financing in Pittsburgh in order to buy Tri-State Tire Company for themselves. However, those plans did not materialize, and, as a result, in April, 1970 Mr. Moore approached the President of Commonwealth Tire, Mr. Conley, and inquired about possible employment with Commonwealth Tire. Mr. Conley was receptive to this inquiry and Mr. Moore was subsequently hired and placed on the payroll of Commonwealth Tire beginning May 15, 1970. However, Mr. Moore did not actually go to work for Commonwealth Tire until May 18, 1970. Mr. Moore did not inform the President of Tri-State Tire, Mr. Johnson, that he had accepted a position with Commonwealth and remained on the payroll of Tri-State and received his last check from Tri-State on May 29, 1970. Mr. Moore also had continued to fill out expense accounts for Tri-State Tire and turned in his last expense account for the week ending May 23, 1970. Mr. Moore testified that he had not told anyone connected with Commonwealth Tire that he was still on the payroll of Tri-State during the last two weeks of May and he

also testified that he had told Mr. Conley before he went to work for Commonwealth that he had informed Mr. Johnson at Tri-State that he was going to quit. It is clear from the evidence that Mr. Moore did continue to work for Tri-State during the last two weeks of May. He checked in at the store in Hamlin every day, continued to file an expense account, continued to use Tri-State's truck, continued to write invoices on behalf of Tri-State, and also continued to supervise Mr. Brock who worked in the Hamlin store.

On June 4, 1970 a representative of Wholesale Tire Company, with the permission of Mr. Johnson, the President of Tri-State Tire Company, removed a large quantity of tires which Wholesale Tire Company had sold to Tri-State on open account. Tri-State owed Wholesale Tire approximately $16,000 and Wholesale Tire evidently became concerned about Tri-State's financial position. On the evening of June 4 Mr. Johnson and the other three stockholders held a meeting at the store in Hamlin and took inventory. It then became apparent that Mr. Johnson had sold a number of tires himself and had not deposited the proceeds with Tri-State. Consequently, Mr. Johnson was removed as president of the company and Mr. Adkins became the new president. Mr. Johnson was made the vice-president and was told to immediately pay about $1,800 to the company which was the amount for which he was liable. It was also discovered during the inventory count that Mr. Moore had a station wagon full of tires parked nearby which were his samples as a salesman for Commonwealth Tire Company. As a result, Mr. Moore's employment with Tri-State was terminated shortly before midnight on June 4, 1970. The next day, Mr. Moore contacted Mr. Conley and advised him of what had taken place the day before at Tri-State and Mr. Conley told Mr. Moore to go to the office of Mr. Houston Smith, who was an attorney in Hamlin, and confer with Mr. Smith as to what course of action should be taken. Mr. Smith testified that Mr. Moore told him that Wholesale Tire Company, with Mr.

Johnson's permission, had removed a large quantity of tires which it had sold to Tri-State; that the treasurer and one-fourth owner of Tri-State Tire Company, Mr. Coronet, had removed certain merchandise which Mr. Moore believed had been placed there on open account; that the former vice-president and one-fourth owner of Tri-State, Mr. Adkins, had taken a truck belonging to Tri-State into the State of Ohio; and that the former president and one-fourth owner of Tri-State Tire, Mr. Johnson, had been improperly taking large sums of money from Tri-State. Consequently, Mr. Houston Smith recommended to Mr. Conley that an attachment of the assets of Tri-State Tire would be in order under these circumstances and an attachment was subsequently issued on June 5, 1970 on the basis of Mr. Moore's affidavit.

Mr. Johnson confirmed the fact that Wholesale Tire Company had been given permission to remove the tires from the Hamlin store which Wholesale had sold to Tri-State and that he had sold tires which belonged to Tri-State and kept the proceeds for himself. Mr. Coronet testified that the merchandise he removed from the store had been placed there by him on a consignment basis and that he removed the products because they were simply not selling.

Mr. Moore testified later that he did not know for a fact that the assertion in his affidavit that the appellee, Tri-State Tire, was converting its assets into cash for the purpose of defrauding creditors was true, and that he merely signed what was drawn up for him by the attorney, Mr. Smith.

On June 24, 1970 the appellee, Tri-State Tire, filed a motion seeking dismissal of the attachment which was accompanied by an affidavit of Mr. Adkins, the President of Tri-State Tire. The motion was heard June 26, 1970 but Commonwealth Tire did not file any counter-affidavit and did not cross-examine Mr. Adkins, and, consequently, the trial court dismissed the attachment on July 6, 1970.

Evidence was introduced during the trial that Mr. Moore was acting as an agent of both parties to this action during the last two weeks of May. He, on occasion, was selling tires for Commonwealth, while at the same time was receiving the same tires on behalf of Tri-State.

The appellee, Tri-State, presented evidence that after the attachment of appellee's bank accounts Wholesale Tire Company had a check from Tri-State for $1,500 returned to Wholesale Tire from the bank. One of the employees of Wholesale testified that the returned check created confusion at Wholesale's office but he did not know whether Tri-State's credit rating was affected as a result. The check was subsequently honored after the attachment was dismissed.

At the trial the appellee introduced its financial statement for a six-months period ending June 4, 1970 which showed that Tri-State had suffered a net loss of $6,960 during that period, but that sales volume had increased dramatically every month with the exception of May, which showed a substantial decline. Mr. Adkins testified that Tri-State lost sales for the month of June because it did not have a route salesman for that month, and that it was precluded from buying additional tires because Tri-State's bank account had been attached and no one was willing to extend credit to it. Appellee also contends that the reason for the decline in sales from April's $7,768.71 to May's $5,418.70 was the fact that Mr. Moore was working for Commonwealth Tire Company the last two weeks in May and was not working in the best interests of Tri-State Tire Company.

The appellee also contended during the trial that the evidence showed that Mr. Moore sold 8 tires on behalf of Commonwealth Tire Company on Sunday, May 10, 1970 to Troutwein Gulf Station. However, the record reveals that Tri-State did not have these particular tires in stock and Mr. Troutwein was in urgent need of these tires. Moreover, since it was Sunday, it appears that it would have been impossible for Tri-State to obtain

credit from Commonwealth for the sale. Consequently, in order to please a customer, Mr. Moore merely sold these tires directly from Commonwealth.

This case was tried by the court without a jury and no findings of fact or conclusions of law were made by the trial court before the judgment was entered, as required by Rule 52(a), Rules of Civil Procedure. This Rule is mandatory, and it has been held that where the findings of facts and conclusions of law are not separately made by the trial court, the case should be remanded to the trial court for the purpose of complying with that Rule. *Pettry v. Chesapeake and Ohio Railway Company,* 148 W.Va. 443, 135 S.E.2d 729; *Smith v. Dental Products Co.,* 168 F.2d 516; *Campbell v. Campbell,* 170 F.2d 809; *Paramount Pest Control Service v. Brewer,* 170 F.2d 553. The purpose of this Rule is to better enable the reviewing court to apply the law to the facts. See WEST VIRGINIA RULES OF CIVIL PROCEDURE, LUGAR AND SILVERSTEIN, page 386 et seq. Although the case can be remanded to the trial court for the failure to comply with Rule 52(a), and such failure is clearly a neglect of duty on the part of the trial court, there is sufficient information in the record with regard to the facts controlling the proper disposition of this case that it will be disposed of without remanding it to the trial court. 5A MOORE'S FEDERAL PRACTICE, 2d ed., § 52.06 [1].

Before the trial for wrongful attachment began a motion was made to dismiss the attachment, which was granted. The grounds relied upon by the appellee to dismiss the attachment were the same grounds it relied upon to recover on its counterclaim for wrongful attachment. However, this procedure was unnecessary because the affidavit required in order to obtain the attachment was not sufficient in law. The affidavit only stated the grounds contained in Code, 38-7-2(e) and did not allege any material facts relied upon to show the existence of the grounds upon which the application of the attachment was based and should have been dismissed for this reason. Code, 38-7-3; *Goodman v. Henry,* 42 W.Va. 526, 26 S.E.

528; *Commercial Credit Company v. Collier,* 106 W.Va. 252, 145 S.E. 380. This principle is clearly stated in point 4 of the syllabus of the *Goodman* case, wherein it is stated: "A statement of material facts in an affidavit for attachment must be certain and definite, in a legal point of view, so as to inform those entitled to defend the attachment what particular facts they must repel."

It should be noted, however, that the fact that an attachment is dismissed on the grounds that the affidavit does not contain sufficient material facts does not necessarily mean that there is, in fact, a lack of good cause for the attachment. 2A M.J., *Attachment and Garnishment,* § 85; *Harris v. Lipson,* 167 Va. 365, 189 S.E. 349, 108 A.L.R. 912.

The pleading upon which this action for wrongful attachment is based is the counterclaim contained in the answer to the petition for the attachment filed by Commonwealth Tire, the appellant. Although the action can be based on a counterclaim, it must contain the necessary allegations to sustain the action, and there is no allegation that the acts in connection with the attachment were done maliciously or without probable cause. 6 AM. JUR. 2d, *Attachment and Garnishment,* § 643; 5 M.J., *Damages,* § 66; *Harris v. Lipson, supra.* Under the circumstances in the case at bar, punitive damages could not be awarded because even if the pleading would have justified such damages, the facts contained in the record would not. This matter is clearly answered in the third point of the syllabus of the case of *Jopling v. Bluefield Water Works & Improvement Co.,* 70 W.Va. 670, 74 S.E. 943, in the following language: "To sustain a claim for punitive damages the wrongful act must have been done maliciously, wantonly, mischievously or with criminal indifference to civil obligations. A wrongful act done under a *bona fide* claim of right and without malice in any form constitutes no basis for such damages."

There is no proof of any actual damages resulting from the alleged wrongful attachment in the case at bar. The

evidence shows that the Tri-State Tire Company, the appellee, had a loss of almost $7,000 for the first six months period of operation ending June 4, 1970 and there was an attempt to prove damages by showing that the sales were less in June when the attachment was obtained than in the preceding months. The appellee states that it was financially sound and that the only reason the sales fell off in June was because it did not have a salesman to sell its products. However, even if it had had a salesman and sold $10,000 worth of tires and accessories it would probably have still had a loss as indicated by its exhibits showing the company's operating expenses and revenues over the previous six months. The appellant, according to the evidence, allowed Tri-State to make sales even when the attachment was in effect and the evidence indicates that the appellee could have obtained sufficient funds to operate by various methods, including advances by the stockholders, or it could have moved to have the attachment dismissed immediately because of the insufficiency of the affidavit filed by the appellant to obtain the attachment. Code, 38-7-3; *Goodman v. Henry, supra; Commercial Credit Company v. Collier, supra.*

The appellee, Tri-State Tire Company, attempted to prove damages by indicating that there was a decrease of sales in the month of June when the attachment was obtained. The damages were not based on any degree of certainty and there can be no recovery in such case. The proof relied on in this case was remote, speculative and conjectural and would not warrant recovery. 5 M.J., *Damages,* § 38; *State ex rel. Shatzer v. Freeport Coal Company,* 144 W.Va. 178, 107 S.E.2d 503.

This principle is clearly stated in the *Shatzer* case in the following language: "As a general rule, the expected profits of a mercantile business are too remote, speculative, and uncertain to sustain a judgment for their loss, and on that ground recovery for the loss of future profits caused by the interruption or destruction of an established business has been denied, unless the act which

caused such loss was malicious. According to the weight of authority, however, recovery may be had for such losses where they are reasonably certain in character and are the proximate result of tort or breach of contract. Proof of only the gross receipts of a business is not sufficient. The proof must not consist of mere conjecture, speculation, or opinion not founded on facts, but must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn. It must be shown that the business which has been interrupted was an established business and had been successfully conducted for a sufficient length of time with an established trade to enable its profits to be ascertained with reasonable certainty. Prospective profits of a new business or enterprise are generally regarded as too remote, contingent and speculative to satisfy the requisite standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of a contract or for a tort."

The general rule for the recovery of damages for wrongful attachment is stated in 6 Am. Jur. 2d, *Attachment and Garnishment,* § 621, wherein it is stated that the recovery of damages " * * * is generally limited to actual damages sustained, compensatory in nature, naturally and proximately resulting from the wrongful attachment * * * ."

It was held in the case of *Mullins v. Baker,* 144 W.Va. 92, 107 S.E.2d 57, that the proper way to prove loss of profits is to deduct the cost and expenses from the sale price. It was also held in the tenth syllabus point of the *Mullins* case that: "Loss of future profits must be proved with reasonable certainty and cannot be based on guess or speculation."

It therefore appears that there was no proper proof of damages to award a judgment against the appellant, Commonwealth Tire Company, regardless of the other matters involved in this case and it is not necessary to

discuss the other assignments of error in the disposition of this case.

For the reasons stated herein, the judgment of the Circuit Court of Lincoln County is reversed and a new trial is awarded.

*Judgment reversed;*
*new trial awarded.*