THE CITY OF MORGANTOWN, *etc.*

*v.*

THE TOWN OF STAR CITY, *etc., et al.*

(No. 13072)

Submitted February 6, 1973.     Decided March 20, 1973.

*S. J. Angotti, Mike Magro, Jr.,* for appellants.

*Frank J. DePond, William A. Moreland,* for appellee.

BERRY, PRESIDENT:

The appellant, the Town of Star City, appeals from a final judgment of the Circuit Court of Monongalia County in a declaratory judgment proceeding entered on May 25, 1970 which ordered that the Town of Star City was legally obligated to pay to the City of Morgantown $40,262 for its share of the construction costs of a sewage treatment plant and an interceptor sewer system in accordance with the terms of two contracts which the municipalities entered into in 1965. The appellant's primary contention is that there was no statutory or legal authority for the Town of Star City

to enter into the contracts and thus the contracts are ultra vires and null and void.

This Court granted appellant's petition for an appeal on March 15, 1971 and the case was submitted for decision on February 6, 1973 upon the briefs and oral arguments on behalf of the respective parties.

It appears from the facts, which are not in dispute in this case, that both municipalities were issued cease and desist orders from state and federal officials to stop polluting the Monongahela River and as a result the City of Morgantown secured the services of a consulting firm which recommended that it would be advantageous to both municipalities if only one sewage treatment plant were built to handle the sewage from both towns. Subsequently, on January 4, 1965 the two municipalities entered into the first of two agreements. The first agreement provided for the City of Morgantown to pay 87% of the total cost of the construction of the interceptor sewers and the Town of Star City to contribute 13% of the total cost. On August 16, 1965 the parties entered into a lease agreement whereby the Town of Star City agreed to pay 3% of the cost of the construction of the treatment plant based upon the bid price and 3% of the operating costs of the plant each year in return for the right to use 3% of the capacity of the treatment plant.

After the contracts were entered into, the City of Morgantown raised its sewer rates in order to provide debt service on the subsequent revenue bonds that were sold to finance Morgantown's proportionate share of the costs of the new facilities. Both municipalities applied for federal funds for the project and their requests were granted. However, the grant to Star City was later withdrawn after Star City did not sell the revenue bonds for the financing of the project. The City of Morgantown subsequently offered to buy Star City's revenue bonds but the offer was not accepted. Star City also did not raise its sewer service fees. In 1968 Morgantown received approximately $35,000 in federal funds which were

allocated to Star City as its share in the costs and which Star City agreed to allow to go directly to Morgantown.

It appears that problems began developing in May of 1965 when officials for Star City received a legal opinion from a Chicago law firm which raised doubts as to the legality of revenue bonds that Star City might issue because under the contracts with the City of Morgantown, Star City was not given any legal interest in the project. Morgantown was the only owner of the facilities and Star City was merely a lessee and hence, according to the legal opinion, the revenue bonds could not be sold because there was no collateral for the bondholders. This legal opinion was given on May 28, 1965 before the parties entered into the second agreement.

Star City has refused to pay its share of the construction costs but has paid 3% of the operating costs of the treatment plant every year. In 1968, Star City negotiated with Morgantown to enter into a new agreement whereby Star City would be given a 3% interest in the treatment plant but an agreement was never reached.

The case was tried without a jury and the Circuit Court held that the two contracts were legal and binding and Star City was obligated to pay $40,262 to the City of Morgantown together with interest from February 1, 1968 at the rate of 4%. This amount was determined as a result of a final audit by the Department of Health, Education and Welfare. The court further found that Star City was not entitled to an undivided interest in the treatment plant or interceptor sewer system.

The appellant has listed eight assignments of error in its brief but they can be consolidated into two assignments as follows: 1) The trial court erred in not making findings of fact and conclusions of law, as required by Rule 52(a), R.C.P.; 2) the trial court erred in holding that the Town of Star City had authority to enter into the contracts or agreements with the City of Morgantown and in not holding that the contracts were ultra vires and, therefore, null and void.

It is true that where a case is tried without a jury Rule 52(a), R.C.P. requires the trial court to find facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court and the case may be remanded for compliance. *Pettry v. Chesapeake and Ohio Railway Company,* 148 W.Va. 443, 135 S.E.2d 729. The purpose of this Rule is to better enable the reviewing court to apply the law to the facts. However, where there is sufficient information in the record with regard to the facts controlling the disposition of the case, it will be disposed of without remanding it to the trial court. 5A MOORE, FEDERAL PRACTICE, § 52.06[1] (2d ed. 1971). The court's order in the case at bar contains findings of facts and conclusions of law sufficient for·the disposition of this case and therefore the first assignment of error does not constitute reversible error. *Commonwealth Tire Company v. Tri-State Tire Company,* 156 W.Va. 351, 193 S.E.2d 544.

The only question to be resolved in this case is whether or not the Town of Star City had the authority to enter into the two contracts or agreements with the City of Morgantown under the laws of this state. If it had the authority and the agreements are valid the Town of Star City is bound by the provisions contained in the agreements.

It is the contention of Star City in its brief that the sole issue is whether the judgment of the trial court is erroneous and contravenes the requirements of Code, 16-13-9, as amended. However, the real issue is whether or not Star City had the authority to enter into the contracts and if it did have the authority and breached the conditions of the contracts the judgment would be valid. Chapter 16, Article 13, Section 9 of the Code of West Virginia, as amended, pertaining to municipal sewage works, merely provides that no municipality is authorized to make any contract or incur any obligation except such as shall be payable from the funds provided under Article 13.

Code, 16-13-19, as amended, specifically authorizes the City of Morgantown and Town of Star City to enter into such contracts as were made in this case, and reads as follows:

"Any municipality operating a sewage collecting system and/or a sewage disposal plant or plants as defined in this article, or which as herein provided has ordered the construction or acquisition of such works (in this section called the owner), is hereby authorized to contract with one or more other municipal corporations or political subdivisions within the State (in this section called the lessee), and such lessees are hereby authorized to enter into such contracts with such owners, for the service of such works to such lessees and their inhabitants, but only to the extent of the capacity of the works without impairing the usefulness thereof to the owners, upon such terms and conditions as may be fixed by the boards and approved by ordinances of the respective contracting parties: Provided, however, that no such contract shall be made for a period of more than fifteen years or in violation of the provisions of said ordinance authorizing bonds hereunder or in violation of the provisions of said trust indenture. The lessee shall by ordinance have power to establish, change and adjust rates and charges for the service rendered therein by the works against the owners of the premises served, in the manner hereinbefore provided for establishing, changing and adjusting rates and charges for the service rendered in the municipality where the works are owned and operated, and such rates or charges shall be collectible and shall be a lien as herein provided for rates and charges made by the owner. The necessary intercepting sewers and appurtenant works for connecting the works of the owner with the sewerage system of the lessee shall be constructed by the owner and/or the lessee upon such terms and conditions as may be set forth in said contract, and the cost or that part of the cost thereof which is to be borne by the owner may be paid as a part of the cost of the works from the proceeds of bonds issued under this article unless otherwise provided by said

ordinance or trust indenture prior to the issuance of the bonds. The income received by the owner under any such contract shall, if so provided in said ordinance or trust indenture, be deemed to be a part of the revenues of the works as in this article defined and be applied as herein provided for the application of such revenues."

Code, 16-13-23(a), as amended, provides for the payment of sewer construction and operation from the rates and charges to be established by the municipalities involved and reads in part as follows:

"Notwithstanding any other provision contained in this article, and in addition thereto, the governing body of any municipal corporation which has received or which hereafter receives an order issued by the chief of the division of water resources or the state water resources board requiring such municipal corporation to cease the pollution of any stream or waters, is hereby authorized and empowered to fix, establish and maintain, by ordinance, just and equitable rates or charges for the use of the services and facilities of the existing sewer system of such municipal corporation, and/or for the use of the services and facilities to be rendered upon completion of any works and system necessary by virtue of said order, to be paid by the owner, tenant or occupant of each and every lot or parcel of real estate or building that is connected with and uses any part of such sewer system, or that in any way uses or is served thereby, and may change and readjust such rates or charges from time to time. Such rates or charges shall be sufficient for the payment of all the proper and reasonable costs and expenses of the acquisition and construction of plants, machinery and works for the collection and/or treatment, purification and disposal of sewage, and the repair, alteration and extension of existing sewer facilities, as may be necessary to comply with such order of the chief of the division of water resources or the state water resources board, and for the operation, maintenance and repair of the entire works and system; and the governing body shall create, by ordinance, a sinking fund to accumulate and

hold any part or all of the proceeds derived from rates or charges until completion of said construction, to be remitted to and administered by the state sinking fund commission by expending and paying said costs and expenses of construction and operation in the manner as provided by said ordinance; and after the completion of the construction such rates or charges shall be sufficient in each year for the payment of the proper and reasonable costs and expenses of operation, maintenance, repair replacement, and extension from time to time, of the entire sewer and works. * * * Any municipal corporation exercising the powers given herein shall have authority to construct, acquire, improve, equip, operate, repair and maintain any plants, machinery, or works necessary to comply with such order of the state water resources board, and the authority provided herein to establish, maintain and collect rates or charges shall be construed as a further additional and alternative method of financing such works and matters, and shall be independent of any other provision of this article insofar as such article provides for or requires the issuance of revenue bonds or the imposition of rates and charges in connection with such bonds: Provided, however, that except for the method of financing such works and matters, the construction, acquisition, improvement, equipment, custody, operation, repair and maintenance of any plants, machinery or works in compliance with an order of the state water resources board, and the rights, powers, and duties of such municipal corporation and the respective officers and departments thereof, including the sanitary board, shall be governed by the provisions of this article."

The contracts were made and entered into by the Sanitary Boards of the two municipalities and approved by the council of each municipality. It does not appear that they were approved by ordinance. It is clear from Code, 16-13-19, as amended, and Code, 16-13-23 (a), as amended, that the Town of Star City had the authority to enter into the contracts involved in the case at bar and thus they are not ultra vires and even if the contracts were not formally approved by ordinance the

municipalities are estopped to assert any invalidity of the contracts on such ground. 56 AM. JUR. 2d, *Municipal Corporations, Etc.,* § 527; Anno. 1 A.L.R.2d 338, 357.

There is no question that the financing for the construction of the sewer system and services thereunder agreed to under the contracts are provided for under the statutes which authorize such contracts to be made. Code, 16-13-19, as amended, and Code, 16-13-23(a), as amended.

In cases where cease and desist orders have been issued by the Chief of the Division of Water Resources of the Department of Natural Resources requiring municipal corporations to cease the pollution of any stream additional methods of financing to remedy the situation are provided. See Code, 20-5A-12, as amended. Specific authority for such financing under the contracts involved in the case at bar is provided for under Code, 16-13-23(a), as amended. Nevertheless, it is the contention of Star City that it is not liable for the payments agreed to under the contracts to be paid to the City of Morgantown because Star City was unable to sell revenue bonds because it was not allowed to have part ownership in the treatment plant or interceptor sewers. This argument is without merit because the City of Morgantown offered to buy the revenue bonds issued by the Town of Star City. It may be that the City of Morgantown should have given Star City part ownership by approving the subsequent proposed contract but there was no requirement under the law for the City of Morgantown to do so. The Town of Star City will have to satisfy the judgment rendered against it in this case. See 56 AM. JUR. 2d, *Municipal Corporations, Etc.,* § 647. This can be done by raising the fees and charges for the sewer services furnished to the citizens and residents of Star City and placing such fees into a special fund for that purpose or by selling revenue bonds to the City of Morgantown.

For the reasons stated herein, the judgment of the Circuit Court of Monongalia County is affirmed.

*Judgment affirmed.*