IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

**FILED**

**May 24, 2024**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0422

THE HANSEN-GIER FAMILY TRUST of April 22, 2016, by its Trustees, Carl C. Hansen and Virginia M. Gier,
Plaintiff Below, Petitioner,

v.

R. MICHAEL HAYWOOD and JOANN T. HAYWOOD,
Defendants Below, Respondents.

Appeal from the Circuit Court of Mineral County
The Honorable Lynn A. Nelson, Judge
Case No. 21-C-51

REVERSED AND REMANDED WITH DIRECTIONS

Submitted:  March 13, 2024
Filed: May 24, 2024

Jonathan G. Brill, Esq.
Jonathan G. Brill, PLLC
Romney, West Virginia

Jason R. Sites, Esq.
Sites Law Firm, PLLC
Keyser, West Virginia

Counsel for Petitioner

Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "Deeds are subject to the principles of interpretation and construction that govern contracts generally." Syllabus Point 3, *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 231 W. Va. 423, 745 S.E.2d 461 (2013).

2.    "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

3.    "Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous." Syllabus Point 9, *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S.E. 472 (1917).

4.    "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syllabus Point 4, *Estate of Tawney v. Columbia Nat. Res., L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006).

5.    "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their

i

written contract or to make a new or different contract for them." Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

6.    "Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment.  The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance."  Syllabus Point 1, *Commonwealth Tire Co. v. Tri-State Tire Co.*, 156 W. Va. 351, 193 S.E.2d 544 (1972).

WALKER, Justice:

Petitioner owns a residence near a shale pit. In the deed to Petitioner's predecessor in title, Respondents had reserved "the use of the shale pit . . . for use on ingress and egress roads of the development property." When Petitioner tried to sell the residence and Respondents demanded access to the shale pit for the first time in twenty years, Petitioner filed for a declaratory judgment that the reservation had fulfilled its purpose and is now void. Problematically, the reservation is unclear as to what "the development property" means. At a bench trial in circuit court, Petitioner advocated for a narrow interpretation that "the development property" means only the immediately neighboring properties that shared an ingress and egress road. The circuit court instead adopted the broad interpretation of Respondents that they had the right to access and remove the shale for any property they develop.

Even with the limited record before us, we conclude that the circuit court overlooked the express language in the reservation identifying a specific use for shale removal and contemplating a singular, then-existing development property. But, while we find that the circuit court's interpretation was erroneous, we cannot draw any conclusions as to the correct interpretation based on the insufficient record below and the lack of findings of fact below beyond the acknowledgement that Respondents owned "considerable acreage and continue[] to develop the property." For that reason, we reverse and remand for additional proceedings consistent with this opinion.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Respondents R. Michael Haywood and Joann T. Haywood acquired 394.08 acres in Mineral County from Clyde Culver (the Culver Tract). Soon after, they conveyed the surface of a 14.86-acre portion of the Culver Tract to Clyde and Sherry Paugh, the predecessors in title to Carl C. Hansen and Virginia M. Gier. In the Haywood-Paugh deed, Respondents reserved for themselves, their heirs, and assigns "the use of the shale pit which is located on said conveyed real estate for use on ingress and egress roads of the development property." In broad terms, the reservation thus addressed *where* the reserved shale could be used and what the reserved shale could be used *for*.

In 2003, the Paughs deeded the property to Mr. Hansen and Mrs. Gier, who constructed a residence in close proximity to the shale pit. Mr. Hansen and Mrs. Gier conveyed the property in 2016 to the Hansen-Gier Family Trust, an inter vivos trust that is the Petitioner in this appeal. When Mr. Hansen and Mrs. Gier, as trustees, attempted to sell the property in 2021, Mr. Haywood, for the first time in nearly twenty nears, demanded access to the shale pit for an unspecified purpose. Contending that any shale removal would likely weaken the stability of the residence constructed nearby, and that the ingress and egress roads to their property and neighboring properties did not require repair, Petitioner filed the underlying declaratory judgment action for the circuit court to determine the limits of the reservation.

2

In the lower court, Petitioner sought a declaration that the reservation had fulfilled its purpose and is now void. Petitioner alleged in its complaint that the ingress and egress roads referenced in the reservation had already been constructed and any further maintenance was the responsibility of the landowner. Petitioner also sought permanent injunctive relief to bar Respondents and their heirs and assigns from entering the property. Alternatively, Petitioner sought a declaration that the reservation was limited to use on the ingress and egress roads of its property and two neighboring parcels, which share a common access to Barnum Road, the main road.

In response, the Haywoods denied that the purpose of the reservation had been fulfilled. As to the allegations in the complaint that the scope of the reservation was limited to using the shale removed from the pit on ingress and egress roads to Petitioner's property and the two neighboring parcels, Respondent answered that "there was no limitation." Respondents further admitted that Mr. Haywood intended to harvest shale from the subject property for use on his development properties, which use they contend is permitted by the plain meaning of the shale reservation in the Haywood-Paugh deed.[1]

---

[1] Respondents also filed a counterclaim with their answer, alleging slander of title and obstruction of access that forced Respondents to acquire shale by other means at their expense. The counterclaim was bifurcated below by agreement of the parties and is not at issue in this appeal.

The circuit court held a bench trial on April 12, 2022.[2]  Petitioner contended that the focus of the parties' disagreement was the scope of the language "the development property" in the reservation and argued that the language was ambiguous and required development of extrinsic evidence.  In support, Petitioner put on the testimony of Mr. Hansen, who was not a party to the creation of the reservation in the Haywood-Paugh deed, over objection of Respondents.  Mr. Hansen testified to his understanding that "the development property" referenced in the Haywood-Paugh deed referred to the two neighboring parcels that Mr. Haywood developed close in time after the Haywood-Paugh deed was executed, those parcels sharing a common access to Barnum Road.

In addition to the predecessor deeds admitted into evidence, Petitioner also submitted two other deeds representing Respondents' out-conveyances from the original Culver Tract.  One of those properties is part of the "Maple Forest Estates" subdivision[3] developed by Respondents.  As to the reservation, Petitioner argued that the shale could not be used on ingress and egress roads in the Maple Forest Estates subdivision or other portions of Culver Tract as part of "the development property" because that subdivision is

---

[2] If the parties exchanged discovery, it is not included in the appendix record. The circuit court's order reflects that the parties informed the court that they were ready to proceed with a trial.

[3] While one of the properties specifies that it is part of the Maple Forest Estates subdivision in listing the restrictive covenants, the other does not, merely listing restrictive covenants generally.  Because Petitioner referred to them jointly below in making its argument, we do the same.

4

a separate development from the subject property, containing different restrictions and covenants. Rather, Petitioner argued, the shale could be used only to maintain the road to its property, which was not in need of maintenance. But Petitioner conceded that there was an additional road through its property that Mr. Hansen classified as an old, abandoned logging road.[4]

Respondents countered that the reservation is unambiguous, contending that "the development property" plainly meant any property that they had developed or were going to develop. At the time of the Haywood-Paugh conveyance, Mr. Haywood claims he owned 1,144 acres in the "Barnum region." To the extent the reservation could be viewed as ambiguous, Mr. Haywood testified that he discounted the price of the 14.86 acres sold to the Paughs based on his use of the shale pit and that the intent of the reservation was that he be able to access the shale pit for use on any of his development properties. When cross-examined on that intent and the choice of words "*the* development property" as opposed to "*any* development property" Mr. Haywood testified:

> [Counsel]: The provision was for (reading) use on ingress and egress roads of the development property. And you interpret "the development property" to be any property that you were developing.
>
> [Mr. Haywood]: Yeah, yeah, that pertains to the development and that was the entire property, you know.

---

[4] As discussed below, the parties disagree as to the character and use of this road in connecting Respondents' development properties.

[Counsel]: Mr. Haywood, how would anybody else in the world know what that meant, but you?

[Mr. Haywood]: Well, it says "development."

[Counsel]: And I agree, Mr. Haywood, it does say "the development property." What I'm asking you is how would anybody else know that[] that meant all of your property?

[Mr. Haywood]: Well, I don't know. It wasn't for me to interpret.

[Counsel]: Is there any specific reason that you didn't specifically write "any of Grantors' property to be developed?"

[Mr. Haywood]: I didn't write it. The attorney did.

[Counsel]: Okay.

[Mr. Haywood]: But he knew what the objective was. I was – I had 1144 acres, and I'm still developing, you know. . . .

As to roads throughout the subject property, Mr. Haywood testified that the road Mr. Hansen identified as an abandoned logging road was actually a "haul road" he built with shale from the pit connecting to the Maple Forest Estates subdivision and that another right of way exists to a different property he developed called North Point.[5] Further, Mr. Haywood testified that he used shale from the pit in the development of both Maple Forest Estates and North Point.

---

[5] In this portion of Mr. Haywood's testimony, he references a 200-acre parcel development property located adjacent to the subject property. Contextually, it appears that Mr. Haywood is referencing the North Point development.

After Mr. Haywood's testimony, the circuit court summarily ruled from the bench that "the only specific intention we have to find is the intention between Mr. Paugh and Mr. Haywood at the time they made their agreement[,]" and ruled that "[Mr. Haywood] has access to the shale pit." The circuit court's subsequent amended declaratory judgment order[6] incorporates that finding by reference, and further finds that "[a]t the time of the creation of the reservation the Defendant owned considerable acreage and continues to develop the property" and "[t]he parties to the original deed creating the reservation intended the shale to be used upon property that the Defendant develops." Based on those findings, the order grants "ownership rights to the shale located upon the property now owned by Plaintiff as well as the right to gain access to remove the shale for property that the Defendants develop" to Respondents. Petitioner appeals that order.

## II.   STANDARD OF REVIEW

In reviewing Petitioner's appeal from a declaratory judgment order, we apply a dual standard of review consistent with the purpose of declaratory judgment actions:

> [B]ecause the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo*; however, any determinations of fact made by the circuit court in reaching

---

[6] The original declaratory judgment order, entered May 2, 2022, erroneously set forth that the parties would contact the court to schedule a bench trial on the bifurcated counterclaim. The amended order is otherwise the same but preserves Petitioner's jury trial demand.

its ultimate resolution are reviewed pursuant to a clearly erroneous standard.[7]

With those standards to guide us, we turn to the reservation.

### III.   ANALYSIS

We begin with the maxim that "[d]eeds are subject to the principles of interpretation and construction that govern contracts generally."[8]  The language employed in a deed is applied to effectuate the parties' intent: "[i]n the construction of a deed or other legal instrument, the function of a court is to ascertain the intent of the parties as expressed in the language used by them."[9]  Consistent with contract principles, interpretation as opposed to application is premised on whether there is ambiguity: "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."[10]  Only upon a finding of ambiguity may a circuit court seek aid of explanation beyond the four corners of the deed; we have explained, "'[i]f a writing is

---

[7] *Cox v. Amick*, 195 W. Va. 608, 612, 466 S.E.2d 459, 463 (1995).

[8] Syl. Pt. 3, *Faith United Methodist Church and Cemetery of Terra Alta v. Morgan*, 231 W. Va. 423, 745 S.E.2d 461 (2013).

[9] *Davis v. Hardman*, 148 W. Va. 82, 89, 133 S.E.2d 77, 81 (1963).

[10] Syl. Pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

not ambiguous, it must speak for itself by its words, without aid of any oral evidence[.]'"[11] And, "[e]xtrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous."[12] We emphasize that a term is not ambiguous merely because the parties disagree as to its meaning.[13] Rather, "[t]he term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning."[14] Upon a finding of ambiguity, we have explained that "[a] trial court may look to a variety of evidence, including the parties' conduct *before and after* delivery of the deed, to discern the parties' intent[.]"[15] In that vein:

> "To enable the court to construe a deed or other writing, ambiguous on its face, it is always permissible to prove the situation of the parties, the circumstances surrounding them when the contract was entered into and their subsequent conduct giving it a practical construction, but not their verbal declarations. But, if a latent ambiguity is disclosed by such evidence, such for instance as that the terms of the writing are equally applicable to two or more objects, when only a certain one of them was meant, then prior and contemporaneous

---

[11] *Faith United Methodist Church*, 231 W. Va. at 443, 745 S.E.2d at 481 (quoting Syl. Pt. 1, in part, *Uhl v. Ohio River R. Co.*, 51 W. Va. 106, 41 S.E. 340 (1902)).

[12] Syl. Pt. 9, *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S.E. 472 (1917).

[13] *Gastar Exploration, Inc. v. Rine*, 239 W. Va. 792, 799, 806 S.E.2d 448, 455 (2017). *Accord*, Syl. Pt. 1, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W. Va. 252, 162 S.E.2d 189 (1968) ("The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court.").

[14] Syl. Pt. 4, *Estate of Tawney v. Columbia Nat. Res., L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006).

[15] *Gastar Exploration*, 239 W. Va. at 799, 806 S.E.2d at 455 (emphasis in original).

transactions and collocutions of the parties are admissible, for the purpose of identifying the particular object intended."[16]

The circuit court here made no affirmative determination as to the existence of ambiguity in the deed reservation, but we can ascertain from its limited findings that it determined the reservation was ambiguous. And we agree, in part. The reservation states that Respondents reserve unto themselves, their heirs, and assigns, "the use of the shale pit which is located on said conveyed real estate for use on ingress and egress roads of the development property." This reservation has two nuanced, yet separate limitations on Respondents' ability to access the shale. The first, primary limitation litigated here is the meaning of "the development property" that limits *where* the shale may be used. We conclude that term to be ambiguous, as discussed below. But the reservation also limits the *purpose* of extraction and use, in that shale taken from the subject property is to be used only on ingress and egress roads, whatever the meaning of "the development property."

Treated separately, the portion of the reservation circumscribing the permitted purpose for extraction and use is plain and unambiguous and must be applied and enforced as written. The circuit court's order granting general access to remove shale from Petitioner's property to use on development property does not include that use-and-purpose limitation and so is contrary to the express language in the deed. We have held that "[w]hen the language of a written instrument is plain and free from ambiguity, a court

---

[16] *Id.* (quoting Syl. Pt. 2, *Snider v. Robinett*, 78 W. Va. 88, 88 S.E. 599 (1916)).

must give effect to the intent of the parties as expressed in the language employed and in such circumstances resort may not be had to rules of construction."[17] A court must apply a plain expression of the parties' intent because "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them."[18] Because the circuit court did not honor that unambiguous use-and-purpose limitation, we reverse its declaratory judgment order in that respect.

Turning to "the development property" location limitation in the reservation, we observe that "the development property" is not defined or otherwise described in the deed. Here, based on the evidence offered to the circuit court, the intent of the parties in using that term is unclear and we agree with Petitioner that it is capable of more than one meaning. Presumably, "the development property" could mean one of four things, albeit not all necessarily reasonable interpretations. The narrowest construction, advocated by Petitioner, is that ingress and egress roads of "the development property" references the specific roads that access the property sold in the Haywood-Paugh conveyance, which were purportedly being developed at that same time. It could also mean the 394.08 acres of the Culver Tract from which the Haywood-Paugh property was extracted, or some portion of

---

[17] *Cotiga Development*, 147 W. Va. at 490, 128 S.E.2d at 631 (citing Syl. Pt. 1, *Magnus v. Halltown Paper Bd. Co.*, 143 W. Va. 122, 100 S.E.2d 201 (1957)).

[18] *Id.* at Syl. Pt. 3.

it. Another interpretation is that "the development property" means the 1,144 acres of property Mr. Haywood claims he owned at the time of the Haywood-Paugh conveyance that he "continues to develop," or some portion of that. Finally, consistent with Respondents' argument and the circuit court's order, it could mean *any* property Mr. Haywood develops, apparently without limitation.

Respondents argue that the circuit court's interpretation should be affirmed by relying on *Totten v. Pocahontas Coal & Coke Co.*,[19] which emphasizes that intent overcomes all: "the polar star that should guide us in the construction of deeds as of all other contracts is, what was the intention of the party or parties making the instrument, and when this is determined, to give effect thereto, unless to do so would violate some rule of property."[20] Respondents contend that the only evidence of the intent of the parties to the Haywood-Paugh deed, which contains the original shale reservation, was the testimony of Mr. Haywood that "the development property" means any property he develops. Based on that, Respondents argue that the circuit court appropriately determined the scope of the reservation to mean that they could access the shale to use on any development property.

We disagree that Mr. Haywood's testimony is the only evidence of intent to be weighed. "The language of the instrument itself, and not surrounding circumstances, is

---

[19] 67 W. Va. 639, 68 S.E. 373 (1910).

[20] *Id.* at 640, 68 S.E. at 374.

the first and foremost evidence of the parties' intent."[21]  In using the singular, definitive "the development property" as opposed to some iteration of "any property the Haywoods develop," the parties to the Haywood-Paugh deed plainly evinced an intent to limit "the development property" to a finite development property in existence at the time of the Haywood-Paugh conveyance.  We have explained that "the express language of the conveyance taken as a whole will overcome any supposed intention."[22]  Likewise, "[i]ntention disclosed, if at all, by inference or implication, is not allowed to prevail over a different intention expressed in terms."[23]  Yet, there are no factual findings or legal conclusions that advance a theory of the meaning of "the development property" as that term is used in the Haywood-Paugh deed.  Consistent with our case law, we are not inclined to ignore that the language of the reservation contemplates that it is limited to a specific, then-existing property, not *any* development property whether then owned or later acquired by Respondents. So, we conclude that the circuit court's interpretation impermissibly broadened the scope of the reservation at issue, and, in effect, erroneously rewrote it.

But despite finding error in the circuit court's too-broad interpretation, we also reject Petitioner's narrow interpretation because it lacks evidentiary support. Petitioner's argument rests on *Gastar Exploration* for the proposition that any ambiguity

[21] *Sally-Mike Properties v. Yokum*, 175 W. Va. 296, 300, 332 S.E.2d 597, 601 (1985).

[22] *Faith United Methodist Church*, 231 W. Va. at 443-44, 745 S.E.2d at 481-82 (quoting *Murphy v. Van Voorhis*, 94 W. Va. 475, 480, 119 S.E. 297, 299 (1923)).

[23] *Sally-Mike Properties*, 175 W. Va. at 300, 332 S.E.2d at 601.

must inure to his benefit: "[a] court must also adopt any reasonable interpretation of the deed most favorable to the grantee."[24]  That commentary offered in *Gastar Exploration* is derivative of the rule espoused in *Paxton*:[25] "[w]here there is ambiguity in a deed, or where it admits of two constructions, that one will be adopted which is most favorable to the grantee."[26]  And as this Court has discussed in the context of reservations specifically, "[r]esort to rules of construction and aids to interpretation, including extrinsic evidence, is proper where the language of an instrument is ambiguous and subject to more than one meaning.  And in cases involving reservations and exceptions, any remaining doubt as to intent should be resolved in the grantee's favor."[27]

While Petitioner's interpretation that "the development property" refers to the ingress and egress roads shared with the two neighboring parcels could arguably have been the intent of Haywood-Paugh deed, there is no evidentiary basis upon which the circuit court could adopt it as the definitive intent of the parties' use of "the development property" under our case precedent.[28]  That is, Petitioner has not shown that his narrow

---

[24] 239 W. Va. at 795, 806 S.E.2d at 451.

[25] 80 W. Va. 187, 94 S.E. 472.

[26] *Id.* at Syl. Pt. 6.

[27] *Sally-Mike Properties*, 175 W. Va. at 300, 332 S.E.2d at 601.

[28] Petitioner appears to argue that *Gastar Exploration* and *Paxton* advocate a rule that the grantee wins by default upon a finding of ambiguity. Or, at the very least, that a grantee's interpretation, reasonable or no, is afforded weight simply by virtue of being the interpretation offered by the grantee. Petitioner's position in that respect is at odds with the

14

interpretation of "the development property" is a reasonable one. The reservation itself does not include any limiting language that narrows it to the confines advocated by Petitioner; the only other "property," development or otherwise, referenced in the deed is the Culver Tract. No extrinsic evidence offered by Petitioner bears out that "the development property" means only Petitioner's property and the neighboring two properties. Petitioner offers only bare allegations of its complaint that the immediately neighboring properties were the only properties being developed close in time to the Haywood-Paugh conveyance – which allegations were denied by Respondents in their answer – and Mr. Hansen's own subjective belief that the reservation was limited to the ingress and egress roads on those properties.

Yet while we can dismiss Respondents' interpretation as contrary to the language of the deed and Petitioner's as unsupported by the evidence, we are left at too cumbersome a disadvantage to resolve the controlling ambiguity of this dispute: which of Mr. Haywood's specific properties existing at the execution of the Haywood-Paugh deed is "the development property" referenced in the shale reservation? The pointed questions asked by the circuit court as to the development of the subject property and surrounding properties went unanswered. The record bears no fruit for this Court to ascertain what

directives in those cases and in *Sally-Mike Properties* to take extrinsic evidence upon a finding of ambiguity. We therefore address Petitioner's argument in the context of the extrinsic evidence offered to support Petitioner's interpretation of "the development property."

active development was occurring at the time or even the location of the subject property, neighboring properties, the Culver Tract, or other development property owned by Respondents in relation to one another.

The location, ingress and egress roads, and development of the various properties referred to throughout the proceedings below are referenced without any context whatsoever, and their location and development during the time of the reservation is critical to understand its meaning and the intent of the parties in choosing that language. Respondents indicate in their answer to the complaint that they have developed and continue to develop property "in the Barnum area," generically reference that they owned 1,144 acres of property at the time of the Haywood-Paugh conveyance (all or some portion of which might be development property), and reference that they have developed property at some point in time within the Culver Tract as well as outside of it.

When those properties were discussed in the bench trial, the exhibits were not marked to show what each witness testified to as far as the roads and contiguity of the properties. For example, when discussing the aerial views of the subject property and neighboring properties, the following description was laid on the record as to ingress and egress roads:

> [Mr. Hansen]: Our property is this (indicating) point. . . .
>
> [Counsel for Mr. Hansen]: And are you able to identify Barnum Road?

16

[Mr. Hansen]: Yes. This is Barnum Road (indicating) that way.

[Counsel]: Some moments ago I was asking you about roads on your real estate or how you access your real estate. Can you demonstrate for the Court, based on that map, how you access your real estate?

[Mr. Hansen]: Yes. When we come in on Barnum Road, we hit our, the next, our road that goes across this property, this property, to our property; and that's how we get to our property.

[Counsel]: Are there any roads – other roads that you're aware of on those three properties?

[Mr. Hansen]: There's an old logging road, but that has been abandoned; and it's now a hiking trail. It's not used. It's abandoned. It's legally abandoned.

[Counsel]: And do you have any idea or do you have any knowledge of how the two parcels to the south of your real estate are accessed?

[Mr. Hansen]: These two (indicating) are accessed by the same road that we are. This one (indicating) comes in and goes up here to where he is now building a home. This one (indicating), nobody has done anything, but they go through the same gate – the gate in here (indicating). They use the same access we do – the road.

On cross-examination, Respondents' counsel established that there was an additional road through Petitioner's property that connected to Maple Forest Estates, one of Respondents' developments. But, again, in demonstrating the roads, the record is replete with (indicating) notations that hinder this Court's review.

Respondents' evidence as to the developments is equally obscured:

[Counsel]: This up here (indicating), what was that called?

17

[Mr. Haywood]: That was another development located adjacent, adjoining his property, and that was a 200-acre parcel that I ended up buying.

****

[Counsel]: Mr. Haywood, Mr. Sites was asking you about this piece of ground here (indicating). When did you buy this?

[Mr. Haywood]: When did I buy it?

[Counsel]: Yes.

[Mr. Haywood]: Approximately the same time, around the same time.

[Counsel]: So, like, do you recall when that may have been?

[Mr. Haywood]: Well, actually, wait a minute. Yeah, yeah, that was – I purchased that before I bought Clyde Culver. . . . .

Most problematically, the circuit court's order contains no findings of fact relative to the interrelation of these various properties and connective roads or the active development at the time of the Haywood-Paugh conveyance. The factual discrepancy as to the character of that additional road through Petitioner's property is both crucial to the analysis and yet unresolved. Petitioner contends it is an old, abandoned logging road and Respondent Haywood contends he took shale from the pit and built the road up to his other development in Maple Forest Estates, a development within the Culver Tract. Mr. Haywood further testified that he used shale from the pit on North Point, one of Respondents' development properties outside of the Culver Tract. The North Point development is also referenced as adjoining the subject property and sharing a right of way but there are no findings relative to that development, either.

18

We have explained that Rule 52(a) of the West Virginia Rules of Civil Procedure requires that actions tried without a jury be disposed of through orders containing findings of fact and conclusions of law sufficient to permit appellate review:

> Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance.[29]

The purpose of requiring an adequate order, is to "better enable the reviewing court to apply the law to the facts[,] [h]owever, where there is sufficient information in the record with regard to the facts controlling the disposition of the case, it will be disposed of without remanding it to the trial court."[30] Here, while the circuit court made limited, conclusory findings as to intent, neither the circuit court's order nor its oral findings of fact during the proceedings shed light on the interrelation of the various properties or active development. Likewise, the parties have built an insufficient record to permit intelligent and just appellate review of the legal significance of "the development property." In such a circumstance, this Court has found that the appropriate procedure is to remand the matter for further development: "[w]here the record does not clearly reveal what actually

---

[29] Syl. Pt. 1, *Commonwealth Tire Co. v. Tri-State Tire Co.*, 156 W. Va. 351, 193 S.E.2d 544 (1972).

[30] *Cty. of Morgantown v. Town of Star City*, 156 W. Va. 529, 532, 195 S.E.2d 166, 168 (1973).

19

transpired in the proceedings below and it is impossible for the appellate court to determine what judgment should finally be rendered, the case should be remanded to the trial court for further development."[31]  Consistent with that directive, we remand this case for additional proceedings.

## IV.  CONCLUSION

The circuit court erred in its interpretation of the reservation insofar as it omitted entirely the use-and-purpose limitation contained in its plain language and broadened the scope of the location limitation beyond that which the ambiguity in "the development property" could be stretched.  The circuit court's May 18, 2022 declaratory judgment order is reversed and the matter is remanded for additional proceedings consistent with this opinion.

Reversed and remanded with directions.

---

[31] *Blevins v. May*, 158 W. Va. 531, 533-34, 212 S.E.2d 85, 86 (1975).