# CHARLESTON.

## DYE v. CORBIN.

.. Submitted January 30, 1906.    Decided March 13, 1906.

1. . TRIAL---*Striking Out Evidence.*

A motion to exclude all the plaintiff's evidence introduced upon the trial of an action should be sustained, when such evidence is insufficient to sustain a verdict in favor of the plaintiff, notwithstanding there is a scintilla of evidence supporting the plaintiff's case.  (p. 267.)

2. PHYSICIANS AND SURGEONS—*Malpractice—Burden of Proof.*

In an action for damages against a physician, for negligence and want of skill in the treatment of an injury or disease, the burden is on the plaintiff to prove such negligence or want of skill, resulting in injury to the plaintiff.  (p. 270.)

3. SAME---*Degree of Skill Required.*

A physician is not required to exercise the highest degree of skill and diligence possible, in the treatment of an injury or disease, unless he has by special contract agreed to do so.  In the absence of such special contract, he is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily exercised by the average of the members of the profession in good standing, in similar localities and in the same general line of practice, regard being had to the state of medical science at the time.  (p. 273.)

4. SAME.

A physician does not warrant or insure that his treatment will be successful, in the absence of special contract to that effect.  (p. 270.)

5. SAME---*Failure to Cure.*

Failure on the part of a physician to effect a cure does not, alone, establish, or raise a presumption of, want of skill, or negligence, on his part.  (p. 273.)

6. · SAME---*Mistake in Judgment.*

Where a physician exercises ordinary skill and diligence, keeping within recognized and approved methods, he is not liable for the result of a mere mistake of judgment.  (p. 273.)

7. SAME.

A physician is liable for the result of an error of judgment, where such error is so gross as to be inconsistent with that degree of skill which it is the duty of a physician to possess.  (p. 273.)

Error to Circuit Court, Ritchie County.

Action by T. E. Dye against M. L. Corbin.  Judgment for defendant, and plaintiff brings error.

*Affirmed.*

Duty & Fidler, for plaintiff in error.

Freer & Robinson, for defendant in error.

Cox, Judge:

On the 14th day of January, 1903, in the circuit court of Ritchie county, T. E. Dye instituted an action of trespass on the case for $10,000 damages against M. L. Corbin, a practicing physician of that county, for malpractice in the diagnosis and treatment of an injured ankle. Upon trial before a jury, and after the plaintiff had introduced all of his evidence, the defendant, without introducing any evidence, moved the court to exclude plaintiff's evidence, which motion being sustained, a verdict for defendant followed. Plaintiff moved to set aside the verdict, which motion was overruled, and judgment entered for defendant. The proper exceptions to the rulings of the court being taken, plaintiff was allowed a writ of error by a judge of this Court.

The assignments of error relate to, and are based upon, the action of the court in sustaining the motion to exclude plaintiff's evidence. The court should have sustained the motion to exclude plaintiff's evidence, if that evidence was insufficient to sustain a verdict in his favor. If it ever was the law that the court should not sustain a motion to exclude plaintiff's evidence, or to exclude plaintiff's evidence and direct a verdict for defendant, when there is only a scintilla of evidence to support plaintiff's case, it is no longer the law in this State. The test is not whether there is a scintilla of evidence to support the plaintiff's case, but whether the evidence will sustain a verdict in his favor. The plaintiff must show a *prima facie* case. This is the only reasonable rule. The utter futility of requiring a court to overrule a motion to exclude plaintiff's evidence where that evidence is insufficient to support a verdict, notwithstanding there is a scintilla of evidence supporting the plaintiff's case, is apparent. Why compel the trial to proceed when in no event can the plaintiff finally recover? It is useless to continue a trial when there is nothing to try, and to compel a defense when there is nothing against which to defend. For these reasons, our later cases hold that a motion to exclude plaintiff's evidence should be sustained when that evidence is insufficient to support a verdict in his favor. *Ketterman* v. *Dry Fork R. R. Co.*, 48 W. Va. 606;

*Cobb* v. *Glenn Boom & Lumber Co.*, 57 W. Va. 49, (49 S. E. 1005); *Williamson & Co.* v. *Nigh et al.*, decided at this term and not yet reported.

This being the rule, was the evidence offered by plaintiff sufficient to sustain a verdict in his favor?

Plaintiff offered evidence tending to prove, among other things, the following: Plaintiff received an injury to his left ankle on the 31st of August, 1902, by being thrown from a horse about two miles from Ellenboro in Ritchie county. After receiving the injury, he was carried to the house of Mullenax, where a large number of persons gathered. The defendant, a practicing physician and the family physician of plaintiff, was sent for, and after some time came and examined the plaintiff's injury. At the time of the examination, the ankle was considerably swollen. The plaintiff said that he thought it was broken. The defendant after examination said it was dislocated, but not broken. Plaintiff requested the defendant to procure another physician, and to administer an anaesthetic. The defendant advised against the employment of another physician, and did not administer an anaesthetic. He procured cotton and splints made from pasteboard, and bandaged the injured ankle. By his direction, persons present assisted him by holding the patient while the ankle was being bandaged. After the plaintiff had been thus treated, he was carried to his home, a short distance. On the next day, the defendant visited the plaintiff and treated the injury. On the second day, the defendant treated the injury, the pasteboard splints being replaced by a tin splint or tin boot leg. The defendant continued the treatment until the sixth or seventh day after the injury, when he removed the tin splint and placed the injured limb in a cast made of plaster of Paris, after which he told the plaintiff that he might get out of bed and go wherever he pleased, Some time after the cast was placed on the injured limb, plaintiff complained of pain. The defendant, being called, opened the cast by cutting a groove in it, again adjusted it to the limb, and put another cast over the old one. Between ten days and three weeks (the time is not shown with certainty) after the injury, plaintiff began to go about by the use of crutches. After he began to go about, he accidentally fell twice, but he claims without hurt to the injured ankle. About the 26th of Sep-

tember, 1902, he went to Parkersburg, some distance from his home, and about that time and afterward went to various other places, and did other acts which are claimed by defendant to constitute contributory negligence on the part of the plaintiff. In our view of the case, it is unnecessary to detail those acts claimed to show contributory negligence.

About ten weeks after the cast was placed on the injured limb, plaintiff went to Parkersburg to consult a physician, and while waiting for the physician to return to his office plaintiff cut off the cast. When the cast was removed, the heel of the foot seemed to be turned inward, and the fore part of the foot had dropped downward. On the 6th of January, 1903, plaintiff went to Cincinnati, Ohio, for treatment by Drs. J. R. and S. H. Spencer, practicing physicians in that city. They made a number of radiographs of the injured limb, and found the following condition, as testified to by Dr. S. H. Spencer: "He had a fracture of the fibula of the left ankle joint. There was a dislocation, and in connection with this fracture and dislocation it threw the joint inward, and the foot turned inward. The dislocation was inward, and the foot turned inward, and the fibula was broken above the external malleolus, and the lower end of the bone was turned backwards; or, in other words, the head of the fibula broken off and was turned backwards. There was an osseous deposit thrown out in and around the head of this bone, which had cemented, as it were, the foot and ankle joint. Because of this anchylosis there was a stiffening of the ankle joint." After returning from Cincinnati, the plaintiff consulted Dr. Cunningham, of Marietta, Ohio, and was treated by him, which treatment resulted in the amputation of the foot about six or seven inches above the ankle. The amputation occurred on the 17th of October, 1904.

For the present, we may eliminate from consideration the question of contributory negligence; and first determine whether or not the plaintiff has made a *prima facie* case, excluding that question.

Plaintiff claims that the evidence in this case shows a liability on the defendant for failure to correctly diagnose the injury, and for failure to properly treat the injury. The declaration charges that the defendant, having accepted the employment of physician for the treatment of the plaintiff, "so

unskillfully and negligently conducted himself in that behalf that,by his want of skill and care,the injury of plaintiff became greatly increased and aggravated," etc. This essential averment must be sustained by proof. Before we can determine the sufficiency of the evidence to sustain this averment, we must ascertain the degree of skill and diligence which the law required of the defendant under the circumstances of this case. There was no special contract on the part of the defendant as to the result of his treatment. The employment was general. The defendant was simply called to treat the plaintiff's injury, and accepted the employment. Our previous cases, *Kuhn* v. *Brownfield*, 34 W. Va. 252, and *Lawson* v. *Conaway*, 37 W. Va. 159, are in point. In the latter case, it was held that a physician was bound to bestow such reasonable and ordinary care, skill and diligence as physicians and surgeons in the same general line of practice ordinarily have and exercise in like cases, time and locality being taken into consideration; and that a physician is bound to exercise the average degree of skill possessed by the profession in such locality. This holding is in accord with the great weight of authority. We think it may be said to be the generally accepted doctrine that a physician is not required to exercise the highest degree of skill and diligence possible, in the treatment of an injury or disease, unless he has by special contract agreed to do so. In the absence of such special contract, he is only required to exercise such reasonable and ordinary skill and diligence as are ordinarily possessed and exercised by the average of the members of the profession in good standing, in similar localities and in the same general line of practice, regard being had to the state of medical science at the time. 22 Am. & Eng. Enc. Law 799; Current Law, Vol. 4 p. 638; 3 Wharton & Stille's Med. Juris. (5th Ed.) §§ 473-475; *Gramn* v. *Boener*, 56 Ind. 497; *Whitesell* v. *Hill*, 66 N. W. Rep. (Ia.) 894; *Small* v. *Howard*, 128 Mass. 131; *Haythorne* v. *Richmond*, 48 Vt. 557; *Pelky* v. *Bailey*, 109 Mich. 561; note to *Gillette* v. *Tucker*, 93 Am. St. Rep. 657.

The general rule stated does not make the physician in any sense the warrantor or insurer of the success of his treatment, in the absence of special contract to that effect. *Law-*

*son* v. *Conaway, supra*; *Kuhn* v. *Brownfield, supra*; 22 Am. & Eng. Enc. Law 800.

The evidence of the Cincinnati physicians, S. H. and J. R. Spencer, who made radiographs of the injured limb, was offered to show want of skill and diligence on the part of the defendant. Dr. S. H. Spencer testified as follows:

"Q. Was this injury of the character that it could have been possible, by proper medical skill, to have reduced it so as to have left the limb in a better condition than it was left in?

A. Yes, sir, that was my judgment.

Q. Suppose a patient had sustained an injury of the ankle joint, so as to have the fibula broken and turned backward, together with a dislocation of the ankle joint, in the manner and character as the one you have described; and suppose that the attending surgeon should undertake to reduce that fracture and dislocation without administering an anaesthetic to the patient, by having him held by physical force while he undertook to reduce the limb, and with no more effect than the one you have examined on the plaintiff; what in your judgment, as a physician and surgeon, would you consider this treatment good or bad?

A. I would consider it bad treatment."

Dr. J. R. Spencer testified as follows:

"Q. Suppose an injury sustained by any one of the kind and character that you find by examination of Mr. Dye's ankle, and it was treated by the attending surgeon without the administration of an anaesthetic to the patient, and by causing him to be held during the manipulation by physical force, whether or not it would have been good treatment?

A. I think it was not the proper way to proceed."

The foregoing is not all the evidence of the two physicians named, but the part quoted will serve to show the character of all of it. It must be borne in mind that these physicians did not see the plaintiff until more than four months after the injury. Neither the physician who was consulted by the plaintiff in Parkersburg, nor the physician who had amputated the foot, was called upon to testify for plaintiff. Taking the evidence of the Cincinnati physicians as true, and giving full force and effect to it and to every legitimate inference that may be drawn from it, we are unable to reach

the conclusion that it shows such negligence or want of skill on the part of the defendant, considering the locality where, and the circumstances under which, the treatment was given, as would make the defendant liable. Of what standard of proper medical skill or bad treatment do these physicians speak? As we have seen, the law does not in any case, without special contract, require the highest degree of skill and diligence possible. We are left to conjecture by what standard these physicians estimated proper medical skill or bad treatment. If these physicians meant the standard existing in Cincinnati, a large city, where they no doubt were familiar with the practice, then such standard fixes no liability on the defendant; because he was not bound by the standard prevailing in Cincinnati, but by the standard prevailing in the locality where the treatment was given, or in like localities. The evidence of these physicians seems be be directed particularly to the failure of the defendant to give an anaesthetic. It will be observed that these physicians do not say that the failure to give an anaesthetic produced a bad result on the injured ankle; or that the treatment of the ankle was improper. The treatment may have been attended with more pain to the patient because an anaesthetic was not administered, but the treatment of the ankle may have been the same, whether with or without an anaesthetic. It does not follow that the injury to the ankle was increased or aggravated by failure to give an anaesthetic. There is no evidence that the injury to the ankle was increased or aggravated by such failure. Such increased or aggravated injury to the ankle cannot be presumed without evidence.

Again, it is not shown that, under the standard of skill and diligence by which the defendant was bound, it was his duty to administer an anaesthetic, considering time, locality and the condition of the patient. The questions propounded to these physicians included none of these conditions which existed when the treatment was given by the defendant. The answers, being responsive to the questions, cannot be taken to include more than the questions. This being true, we are left without any opinion from these physicians as to whether the treatment given by the defendant, under the conditions existing when it was given, was proper or improper. There is absolutely no evidence showing what the proper treatment

for the injured ankle was, at the time and under the conditions existing when the defendant gave the treatment. To hold the defendant liable under the evidence of these physicians would be to do so upon mere conjecture, without any satisfactory proof. Proof showing mere conjectural possibility that unfavorable results were due to want of care or skill, is not sufficient to make a physician liable. 3 Wharton & Stille's Med. Juris. § 517.

It may be claimed that the evidence of the plaintiff discloses failure of defendant's treatment to cure the injured ankle, and also error or mistake in diagnosis. Failure on the part of a physician to affect a cure does not, alone, establish, or raise a presumption of, want of skill, or negligence, on his part. *Lawson* v. *Conaway, supra;* 3 Wharton & Stille's Med. Juris. § 517; *Wohlert* v. *Seibert,* 23 Pa. Sup. Ct. 213; *Haire* v. *Reese,* 7 Phila. 138; *Pettigrew* v. *Lewis,* 46 Kan. 78; *Barney* v. *Pinkham,* 29 Neb. 350; *Craig* v. *Chambers,* 41 Ohio St. 253; *Sims* v. *Parker,* 41 Ill. App. 284.

It has also been held that the fact that a physician fails to discover a fracture or dislocation does not, alone, establish, or raise a presumption of, want of care on his part. 3 Wharton & Stille's Med. Juris. § 517; *Richards* v. *Willard,* 176 Pa. 181; *James* v. *Crockett,* 34 N. B. 540.

Where a physician exercises ordinary care and skill, keeping within recognized and approved methods, he is not liable for the result of a mere mistake of judgment. A physician is liable for the result of error of judgment, where the error is so gross as to be inconsistent with that degree of skill which it is the duty of a physician to possess. 3 Wharton & Stille's Med. Juris. § 501; *West* v. *Martin,* 31 Mo. 375; *Johnson* v. *Winson,* 94 N. W. (Neb.) 607; 22 Am. & Eng. Enc. Law 805, and cases cited in Note 1.

We find no evidence of gross error of judgment; no evidence as to what the proper treatment was under the conditions existing when the defendant treated the plaintiff; no evidence that the treatment given was improper, considering time, locality and conditions.

We therefore hold that the plaintiff's evidence was insufficient to sustain a verdict in his favor. The judgment of the circuit court must be affirmed.

*Affirmed.*