579 S.E.2d 561

**Patrick M. MAYS, Administrator of the Estate of Robert B. Mays, deceased, Plaintiff Below, Appellant**

v.

**Hao CHANG, M.D., and Wesley Olson, M.D., Defendants Below, Appellees**

No. 30729.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided March 19, 2003.

---

Robert A. Taylor, Esq., R. Christopher Anderson, Esq., Masters & Taylor, Charleston, West Virginia, Attorney for Appellant.

Mark A. Robinson, Esq., Flaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, for Appellee Hao Chang, M.D.

PER CURIAM:

In this appeal from the Circuit Court of Nicholas County, we are asked to review a judgment order on a jury's verdict in a medical malpractice action. The appellant appeals the circuit court's decision to exclude certain evidence from the trial, and the circuit court's decision to give a "mistake of judgment" instruction to the jury.

As set forth below, we find both decisions by the circuit court were in error and prejudicial to the outcome of the trial, reverse the jury's verdict in favor of the appellee, and remand the case for retrial.

I.

The appellant, Patrick Mays, is the administrator of the Estate of Robert B. Mays. Robert B. Mays ("Mr.Mays") was diagnosed with colorectal cancer in March 1993, and he died as a result of the disease on January 1, 1995. The appellant contends that Mr. Mays' family physician, appellee Dr. Hao Chang, was negligent in failing to discover the colorectal cancer.

Mr. Mays suffered from various chronic problems, including insulin dependent diabetes and high blood pressure. Between September 1989 and March 1993, the appellee treated Mr. Mays for these problems. The appellant contends that during this time period, Mr. Mays repeatedly complained to at least four individuals that he had constant lower stomach pain (below the belt line) and diarrhea. Two individuals testified that Mr. Mays had a drastic weight loss. However,

the appellee's office chart for Mr. Mays contains no mention of these problems, and the appellee denies Mr. Mays ever disclosed these symptoms to him.

In February 1993, Mr. Mays was admitted to a hospital and diagnosed by hospital personnel with a minor myocardial infarction. Blood tests performed on Mr. Mays also revealed that he was suffering from anemia. When tests were performed to find the source of the anemia, in March 1993 hospital personnel discovered Mr. Mays' colorectal cancer.

The appellant brought the instant lawsuit against the appellee in March 1995, and a jury trial was held in November 2000. The thrust of the appellant's case was that the standard of care required that the appellee routinely perform blood tests similar to those done by the hospital, as well as digital rectal examinations and fecal occult blood tests. Had the appellee done these tests, the appellant argues the cancer would have been detected in 1991 or 1992, when Mr. Mays' chances of a successful were recovery were as high as 90%. When Mr. Mays' cancer was detected in 1993, the chance of survivability was only 26%.

During the trial, the circuit court completely excluded the appellant's evidence regarding whether the standard of care imposed upon appellee Dr. Chang a duty to perform blood tests, tests that might have shown Mr. Mays was anemic as a result of his colorectal cancer. However, the circuit court did allow the appellant to introduce expert evidence that the standard of care required the appellee to routinely perform digital rectal examinations and fecal occult blood tests, to test for blood in Mr. Mays' stool. The appellee countered the appellant's evidence with a government guideline for doctors that, in essence, indicated that it was not the standard of care to routinely perform digital rectal examinations or fecal occult blood tests. The appellee also argued that Mr. Mays never indicated to him any problems—such as diarrhea or abdominal pain—that would warrant doing these latter tests. At the conclusion of the trial, the circuit court instructed the jury, over the appellant's objection, that a physician cannot be held liable for a mere "mistake of judgment" in treating a patient.

On December 1, 2000, the jury returned a verdict finding that the appellee did not deviate from any standard of care in treating Mr. Mays. The circuit court entered a judgment order reflecting the jury's verdict on December 15, 2000, and denied the appellant's motion for a new trial on July 17, 2001.

The appellant now appeals the circuit court's trial rulings.

## II.

At trial, the appellant proffered testimony from two experts that when a family doctor—such as the appellee—treats a patient with diabetes and high blood pressure, the standard of care requires the doctor to routinely perform simple blood tests such as a complete blood count ("CBC") or a hemoglobin a/lc test. The experts indicated that the standard of care for a reasonable and prudent healthcare provider required that these blood tests be done at least once a year. The appellee did perform tests to ascertain the sugar levels in Mr. Mays' blood, but never performed a CBC or hemoglobin a/lc test.

The appellant's experts indicated, in a proffer of testimony made outside the presence of the jury, that it would have taken several years for the cancer to develop, and that early detection is critical to increasing the odds of surviving the disease. The appellant asserts that if the blood tests had been done in 1991 or 1992—as they were done by hospital personnel in 1993—the appellee would have discovered that Mr. Mays was anemic, and routine follow-up tests would have revealed that the cause of the anemia was that Mr. Mays was bleeding from pre-cancerous polyps and cancerous lesions in his colon, which by 1993 had developed to over 120 pre-cancerous polyps and cancerous lesions. The appellant's experts further stated that the appellee's failure to do the blood tests and follow-up diagnostic testing were deviations from the proper standard of care, given Mr. Mays' medical problems. The appellant's experts indicated in their proffer that, as a result, the appellee's

actions drastically reduced Mr. Mays' chances of survival.

The circuit court, however, ruled that the appellant could not establish a causal connection between the appellee's failure to give Mr. Mays a CBC or hemoglobin a/lc test and his death due to colorectal cancer. Applying a proximate cause analysis, the circuit court determined that it was not foreseeable, to a physician using ordinary care, that the failure to give a patient blood tests for treatment of diabetes and hypertension would subsequently lead to the patient dying from colon cancer. The circuit court therefore prohibited the appellant from introducing any evidence regarding the appellee's failure to administer blood tests to Mr. Mays.

The appellant contends that the circuit court erred, and argues that the issue of whether the appellee deviated from the standard of care in failing to have Mr. Mays undergo routine blood tests, and whether that deviation was a proximate cause of Mr. Mays' death, was a question of fact for the jury. We agree.

■ It is axiomatic that in a medical malpractice lawsuit such as the instant case, a plaintiff must establish that the defendant doctor deviated from some standard of care, and that the deviation was "a proximate cause" of the plaintiff's injury. *W.Va.Code,* 55–7B–3 [1986].[1]

■ The phrase "a proximate cause" in *W.Va.Code,* 55–7B–3 "must be understood to be that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would not have occurred." Syllabus Point 3, *Webb v. Sessler,* 135 W.Va. 341, 63 S.E.2d 65 (1950). "The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred." Syllabus Point 5, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d

672 (1954), *overruled on other grounds, State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983).

■ To be clear, a plaintiff's burden of proof is to show that a defendant's breach of a particular duty of care was *a* proximate cause of the plaintiff's injury, not the *sole* proximate cause. As we stated in Syllabus Point 2 of *Everly v. Columbia Gas of West Virginia, Inc.,* 171 W.Va. 534, 301 S.E.2d 165 (1982), "A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury."

■ We have often stated that proximate cause is an "elastic and mystical term that is meaningless unless it is applied to the facts of a particular case." *Smith v. Penn Line Service, Inc.,* 145 W.Va. 1, 33, 113 S.E.2d 505, 522–23 (1960) (Browning, P., dissenting). As such, questions of proximate cause are often fact-based issues reserved for jury resolution. "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syllabus Point 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964). *See also,* Syllabus Point 2, *Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963) ("The questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them.")

■ In the instant case, we believe that a reasonable jury could conclude from the appellant's evidence that the appellee had a duty of care to regularly perform CBC or

---

1. *W.Va.Code,* 55–7B–3 establishes the following elements of proof in a lawsuit against a health care provider:

The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:

(a) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and

(b) Such failure was a proximate cause of the injury or death.

hemoglobin a/lc tests on Mr. Mays, and that the appellee breached that duty. A jury could further have concluded that the breach of that duty was a proximate cause of the harm suffered by Mr. Mays—the harm being the lost chance of early detection and treatment of the colorectal cancer.[2] In other words, a jury could conclude that the appellee's allegedly negligent inactions contributed to Mr. Mays' lost chance of early detection and treatment, and conclude that if the appellee had complied with the standard of care, the harm to Mr. Mays would not have occurred. Because we believe reasonable jurors could draw different conclusions from the evidence proffered by the appellant, we find that the circuit court erred in excluding the appellant's blood test evidence.

■ We have stated that, under Rule 103(a) of the *West Virginia Rules of Evidence,* for the exclusion of evidence to warrant the reversal of a judgment,

> ... two elements must be shown: error and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no ways affects the outcome of the trial. Stated conversely, error is prejudicial and ground for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it.

*Reed v. Wimmer,* 195 W.Va. 199, 209, 465 S.E.2d 199, 209 (1995). After carefully examining the trial record, we conclude that the circuit court's exclusion of the appellant's evidence was prejudicial to the final outcome of the trial. The error therefore warrants reversal of the jury's verdict and the circuit court's judgment order thereon.

■ The appellant also contends that the circuit court erred when it gave the jury the "mere mistake of judgment" instruction from

*Dye v. Corbin,* 59 W.Va. 266, 53 S.E. 147 (1906). The jury was instructed as follows:

> In the treatment of a patient such as Mr. Mays, a physician who exercises ordinary skill and care, while keeping within recognized and approved methods, is not liable for a result which may flow from a mere mistake of reasonable and honest judgment on his part.

■ The appellant objected to this instruction—which was given to the jury on December 1, 2000—and now maintains that the instruction was an improper statement of the law because this Court held—on December 12, 2000—in Syllabus Point 5 of *Pleasants v. Alliance Corp.,* 209 W.Va. 39, 543 S.E.2d 320 (2000), that:

> The "mistake of judgment" jury instruction, which this Court first approved in *Dye v. Corbin,* 59 W.Va. 266, 53 S.E. 147 (1906), wrongly injects subjectivity into an objective standard of care, is argumentative and misleading, and should no longer be used to instruct the jury concerning the relevant standard of care in a medical malpractice action. Accordingly, we hereby overrule *Dye v. Corbin,* 59 W.Va. 266, 53 S.E. 147 (1906), and its progeny, insofar as those cases approve the giving of a "mistake of judgment" instruction.

Although this Court found that the giving of the "mistake of judgment" instruction in *Pleasants* was harmless error, we recently held in *Yates v. University of West Virginia Bd. of Trustees,* 209 W.Va. 487, 549 S.E.2d 681 (2001) and *Hicks v. Ghaphery,* 212 W.Va. 327, 571 S.E.2d 317 (2002) that such an instruction can constitute reversible error. After consideration of the record in the instant case, we find, as we did in *Yates* and *Hicks,* that the giving of the mistake of judgment instruction by the circuit court in this case constitutes reversible error.[3]

**2.** The appellant's legal theory was discussed in *Thornton v. CAMC,* 172 W.Va. 360, 305 S.E.2d 316 (1983), where we stated at Syllabus Point 5:

> Where a plaintiff in a malpractice case has demonstrated that a defendant's acts or omissions have increased the risk of harm to the plaintiff and that such increased risk of harm was a substantial factor in bringing about the

ultimate injury to the plaintiff, then the defendant is liable for such ultimate injury.

**3.** The appellant also challenges the circuit court's refusal to give an instruction dealing with circumstantial evidence, which stated that the appellant was required "to prove his case by a preponderance of the evidence and this may be done by circumstantial evidence as well as direct

### III.

We conclude that the circuit court erred in excluding the appellant's evidence regarding whether the appellee had a duty of care to administer blood tests to Mr. Mays. We also conclude that the circuit court erred in giving the jury a "mistake of judgment" instruction, and that these errors were not harmless. Accordingly, the judgment of the circuit court is reversed, and the case is remanded for retrial.

Reversed and Remanded.

evidence." The circuit court apparently refused to give this instruction on the basis that it conflicted with *W.Va.Code,* 55–7B–7 [1986] which requires that the "applicable standard of care and the defendant's failure to meet said standard, if at issue, shall be established ... by testimony of one or more knowledgeable, competent expert witnesses if required by the court." In other words, it appears that the circuit court concluded that circumstantial evidence may never be considered by a jury to establish a physician's duty of care or breach of the duty of care.

While we question the circuit court's conclusion, because we are able to resolve this case on other grounds, and because of the brevity of the parties' arguments on the issue, we decline to address this issue.