IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0849

_____

FILED

**April 26, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MYRA KAY REILLEY, Administrator of the Estate of Francis E. Reilley, and
MYRA KAY REILLEY, individually,
Defendants Below,
Petitioners,

v.

THE BOARD OF EDUCATION OF THE COUNTY OF MARSHALL,
Plaintiff Below,
Respondent.

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 10-C-180-H

AFFIRMED, IN PART, AND REVERSED, IN PART AND REMANDED
_____

Submitted: February 15, 2022
Filed: April 26, 2022

Jeffrey A. Holmstrand, Esquire          Kenneth E. Webb, Esquire
Grove, Holmstrand & Delk, PLLC          Bowles Rice LLP
Wheeling, West Virginia                 Charleston, West Virginia
Counsel for Petitioners                 Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE ALAN D. MOATS sitting by temporary assignment.

i

SYLLABUS BY THE COURT

1.  "Under Rule 4(k) of the *West Virginia Rules of Civil Procedure* [1998], if a plaintiff fails to serve a summons and complaint upon a defendant within 120 days, then the circuit court should dismiss the action against that defendant without prejudice. However, the circuit court shall extend the time for service if the plaintiff shows good cause for the failure. In the absence of a showing of good cause, upon motion or upon its own initiative, the circuit court may in its discretion extend the time for service." Syllabus Point 3, *Burkes v. Fas-Chek Food Mart Inc*, 217 W. Va. 291, 617 S.E.2d 838 (2005).

2.  "Where a plaintiff sustains a noticeable injury to property from a traumatic event, the statute of limitations begins to run and is not tolled because there may also be latent damages arising from the same traumatic event." Syllabus Point 2, *Hall's Park Motel, Inc. v. Rover Construction, Inc.*, 194 W. Va. 309, 460 S.E.2d 444 (1995).

3.  ""The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred.'" Syllabus Point 5, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds, State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983)." Syllabus Point 1, *Mays v. Chang*, 213 W. Va. 220, 579 S.E.2d 561 (2003).

4. "'After an evidentiary hearing on a complaint for a permanent injunction, a trial court is required to make a finding of fact and conclusion of law under Rule 52 of the West Virginia Rules of Civil Procedure, and findings and conclusions also should be made upon ruling on a motion to dissolve an injunction in order to assist appellate courts in determining whether there is a legitimate area for state regulation by injunction.' Syl. pt. 4, *United Maintenance and Manufacturing Co. v. United Steel Workers of America,* 157 W.Va. 788, 204 S.E.2d 76 (1974)." Syllabus Point 2, *West v. National Mines Corp.*, 175 W. Va. 543, 336 S.E.2d 190 (1985).

5. "'Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance.' Syllabus Point 1, *Commonwealth Tire Co. v. Tri–State Tire Co.,* 156 W.Va. 351, 193 S.E.2d 544 (1972)." Syllabus, *Clark Apartments ex rel. Hood v. Walaszczyk*, 213 W. Va. 369, 582 S.E.2d 816 (2003).

Armstead, Justice:

The Board of Education of the County of Marshall ("Respondent") brought suit against Myra Kay Reilley, Administrator of the Estate of Francis E. Reilley, and Myra Kay Reilley, individually, ("Petitioners") for alleged flood damages caused to Respondent's property as a result of the construction of a road and bridge which Respondent maintained impeded the flow of Little Grave Creek in Glen Dale, West Virginia. The matter proceeded to a jury trial and Petitioners were found to be liable to Respondent for $122,861.79 in damages, plus pre- and post- judgment interest, for multiple flooding events. Based upon that jury verdict, the circuit court granted injunctive relief which required Petitioners to remove the bridge and road. Petitioners then appealed to this Court, raising four issues: 1) the complaint in the action was not timely served; 2) damages for two flood events were barred by the applicable statute of limitations; 3) the evidence was insufficient for the jury to find that construction of the road and bridge was the proximate cause of Respondent's damages; and 4) the circuit court's order granting injunctive relief failed to contain appropriate findings of fact and conclusions of law.

After review of the trial transcript and evidence, the briefs and arguments of the parties, and all other matters of record, we affirm on the issues of service of process and proximate cause, and we reverse and remand on the statute of limitations issue and on the granting of injunctive relief.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Petitioner's husband, Frances E. Reilley, purchased a 198-acre tract of land located along Little Grave Creek in Glen Dale, West Virginia.[1] The access to the property is from State Route 2 and along a right of way which straddles the southern boundary of property owned by Respondent. Respondent's property is comprised of 37 acres and is the site of John Marshall High School and its attendant baseball field. The bulk of Petitioners' property is located on the east side of Little Grave Creek and Respondent's property is located on the west side. Thus, Little Grave Creek is the eastern boundary of the Respondent's property and is also the western boundary of the Petitioners' property.

Sometime in 1984, Francis Reilley, with the assistance of his then co-owner brothers and others, constructed an embankment on the right of way along the southern boundary of Respondent's property for an elevated roadway. At the same time, a bridge was constructed across Little Grave Creek to Petitioners' 198-acre tract. Once completed, these improvements became known as Duck Lane.

There were no issues with the construction of Duck Lane until the remnants of Hurricane Ivan passed through the Upper Ohio River Valley on September 17, 2004,

---

[1] Prior to this purchase, Mr. Reilley was a co-owner of the property with his brothers. Mr. Reilley died during the pendency of this action and his heir and estate were substituted as parties.

causing a large amount of rain to fall in Marshall County. On that date, and for the first time since construction of Duck Lane, Little Grave Creek overflowed its banks and flooded the nearby baseball field. This marked the first of a number of flooding events that occurred on February 1, 2008, June 17, 2009, and June 5, 2010, each causing damages to Respondent's baseball field.

On September 2, 2010, Respondent brought suit against Mr. Reilley alleging multiple causes of action – continuing trespass, interference with riparian rights, nuisance at law, and private nuisance. Respondent also sought an injunction to require Mr. Reilley to abate the nuisance by removing Duck Lane. The summons was issued on January 28, 2011, and Mr. Reilley was personally served with the summons and complaint that day, 148 days after the complaint was filed. Mr. Reilley moved to dismiss the complaint on the ground that it was not served within 120 days of filing as required by Rule 4(k) of the West Virginia Rules of Civil Procedure. Mr. Reilley also moved to dismiss the allegations regarding the first two flood events – September 17, 2004 and February 1, 2008[2] – on the ground that they fell outside the applicable statute of limitations.

---

[2] The initial complaint listed this date as March 4, 2008. The amended complaint changed it to February 1, 2008.

3

A series of events then took place which ultimately resulted in the circuit court not ruling on this motion until February 8, 2018.[3] At that time, the circuit court denied the motion to dismiss, finding that "'good cause' clearly exists to allow [Respondent] more than one hundred and twenty (120) days from the filing of the Complaint" to serve Mr. Reilley. As to the issue of the 2004 and 2008 flood events being outside the applicable statute of limitations, the circuit court found:

> While [Petitioners'] position may very well be spot-on correct relative to damages alleged to have resulted from the 2004 and 2008 flooding episodes, it is this Court's position that the parties should be given further opportunity for discovery to develop the facts. When discovery has sufficiently produced such facts, [Petitioners] may reach the same issues by way of a Motion for Summary Judgment.

Thereafter, both parties filed motions for summary judgment. Petitioners renewed their argument that Respondent's claims relating to the September 17, 2004 and February 1, 2008, flooding events were filed outside the statute of limitations and were time-barred. According to the appendix record, no written order was ever entered on the dispositive motions but the circuit court ruled on the record that all dispositive motions were denied.

---

[3] These events include the death of Mr. Reilley and the substitution of Petitioners as parties to the action, retirement of a circuit judge, the recusal of the judge who replaced the retired judge, and the transfer of the matter to another circuit judge, as well as long periods of unexplained inactivity in the case. Despite this long delay, we note that the record does not indicate that the parties actively sought a ruling by the circuit court on the pending motion.

The matter then proceeded to a jury trial that lasted three days. Prior to deliberations, the parties stipulated as to the damages caused to Respondent's property as a result of the separate flooding events: September 17, 2004 - $54,992.72; February 1, 2008 - $7,555.97; June 17, 2009 - $58,038.65; and, June 5, 2010 - $2,274.45. As noted in the judgment order dated April 16, 2019, at the conclusion of the trial, the jury found Petitioners liable for all four flooding events. Thereafter, Petitioners filed motions for judgment as a matter of law, a new trial, and/or to amend the judgment order. The circuit court denied the motions for judgment as a matter of law and for a new trial and amended the judgment order with regard to the calculation of pre-judgment interest.

Over a year following trial, in an order containing no findings of fact or conclusions of law, the circuit court granted Respondent injunctive relief requiring Petitioners to remove the embankment and bridge. Petitioners then filed this appeal.

## II. STANDARD OF REVIEW

As there are multiple issues arising from divergent procedural postures, we set forth the standards of review applicable to each of the issues raised in the appeal. The circuit court's denial of Petitioners' motion to dismiss the complaint under Rule 4(k) of the West Virginia Rules of Civil Procedure is reviewed under an abuse of discretion. *See* Syllabus Point 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996) ("This Court reviews the circuit court's final order and ultimate disposition under an abuse of

5

discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*").

A denial of a motion for summary judgment is reviewed *de novo.* "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syllabus Point 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Likewise, the denial of a motion for judgment as a matter of law is also reviewed *de novo.* "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo.*" Syllabus Point 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009) (brackets in original).

Denial of motions for new trial are reviewed under an abuse of discretion standard:

> [I]t is well-established that "'[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syllabus point 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus Point 3, *Carpenter v. Luke,* 225 W.Va. 35, 689 S.E.2d 247 (2009). In other words, our standard of review for a trial court's decision regarding a motion for a new trial is abuse of discretion. *Marsch v. American Elec. Power Co.,* 207 W.Va. 174, 180, 530 S.E.2d 173, 179 (1999).

6

*MacDonald v. City Hosp., Inc.*, 227 W. Va. 707, 715, 715 S.E.2d 405, 413 (2011).

Finally, we review a circuit court's order granting injunctive relief under the following standard of review:

> In reviewing objections to the findings of fact and conclusions of law supporting the granting or the denial of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting or denying the temporary injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.

Syllabus Point 1, *Bansbach v. Harbin*, 229 W. Va. 287, 728 S.E.2d 533 (2012).

## III. ANALYSIS

Having set forth the applicable standards of review, we now turn to each issue raised in this appeal.

### A. Untimely Service of Complaint

We first address the issue of service of the complaint and summons on Mr. Reilley.[4] As stated above, the complaint was filed on September 2, 2010, but the summons was not issued until January 28, 2011, 148 days after the complaint was filed. The

---

[4] We reiterate that Mr. Reilley passed away during the course of the litigation and Petitioners were substituted as parties in his place.

summons and complaint were served that day upon Mr. Reilley.  Rule 4(k) of the West Virginia Rules of Civil Procedure provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effective within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*W. V. R. C. P.* 4.  Upon a finding of good cause, an extension of time beyond the 120 days for serving a complaint is mandatory.  We have discussed this mandatory application of Rule 4(k) and held:

> Under Rule 4(k) of the *West Virginia Rules of Civil Procedure* [1998], if a plaintiff fails to serve a summons and complaint upon a defendant within 120 days, then the circuit court should dismiss the action against that defendant without prejudice. However, the circuit court shall extend the time for service if the plaintiff shows good cause for the failure. In the absence of a showing of good cause, upon motion or upon its own initiative, the circuit court may in its discretion extend the time for service.

Syllabus Point 3, *Burkes v. Fas-Chek Food Mart Inc*, 217 W. Va. 291, 617 S.E.2d 838 (2005) (brackets in original).  In *Burkes*, we also set forth factors to determine if good cause exists to extend the time for service:

> In considering whether good cause has been satisfied, circuit courts should consider the "'(1) length of time to obtain service; (2) activity of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) ease with which location could have been known; (5) actual knowledge by defendant of the action; and (6) special circumstances." *Estate of Hough ex rel. Lemaster v. Estate of Hough ex rel. Berkeley County*

8

> *Sheriff,* 205 W. Va. 537, 542, 519 S.E.2d 640, 645 (1999) (*per curiam*).

*Id.*, 217 W. Va. at 298, 617 S.E.2d at 845. Additionally, we have previously explained that:

> Because the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules. *See Painter v. Peavy,* 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases . . . in determining the meaning and scope of our rules."). *See, e.g., State v. Sutphin,* 195 W.Va. 551, 563, 466 S.E.2d 402, 414 (1995) ("The West Virginia Rules of Evidence are patterned upon the Federal Rules of Evidence, . . . and we have repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." (citations omitted)).

*Keplinger v. Virginia Elec. & Power Co.,* 208 W. Va. 11, 20 n. 13, 537 S.E.2d 632, 641 n. 13 (2000). Thus, under Rule 4(m) of the Federal Rules of Civil Procedure, the rule after which West Virginia's Rule 4(k) is patterned, the United States Supreme Court has stated that "[c]omplaints are not to be dismissed if served within 120 days, or within such additional time as the court may allow." [5] *Henderson v. United States*, 517 U.S. 654, 663 (1996). This is because "[t]he liberality of the Federal Rules of Civil Procedure allows minor defects in service to be overlooked, as long as the defendant received actual notice of the lawsuit and has an opportunity to defend the action." 4B Charles Alan Wright,

---

[5] Federal Rule of Civil Procedure 4(m) now requires service within 90 days.

Arthur R. Miller & Adam B. Steinman, *Federal Practice and Procedure* § 1137 (2021 Supp.). This is in accord with our previous holding that "the West Virginia Rules of Civil Procedure should be construed liberally to promote justice." Syllabus Point 1, in part, *Harrison v. Davis*, 197 W. Va. 651, 478 S.E.2d 104 (1996).

Below, the circuit court found that good cause "clearly exists," pointing to the affidavit of Respondent's then-counsel Christopher P. Riley, Esquire, which stated:

> 2. At [Respondent's] request, Riley did not have the Complaint served on the [then-]defendant, Francis E. Reilley, as [Respondent] wished to provide [Mr.] Reilley with an opportunity to engage in discussions to amicably resolve the recurrent flooding of the John Marshall High School athletic fields and resulting damages therefrom caused by the defendant's bridge, roadway, and alterations to the watercourse of Little Grave Creek.
>
> 3. To this end, [Attorney Riley] wrote to [Petitioners' then-attorney], William Kolibash, on September 7, 2010, to explore an amicable resolution and request information to aid in resolution of the claim. . . .
>
> 4. Other than a brief acknowledgement of receipt and an indication that a response would be forthcoming, the defendant [Mr.] Reilley did not respond.
>
> 5. On or about September 1, 2010, [Attorney Riley] began a restructuring of his law firm. . . .
>
> 11. The aforesaid firm matters resulted in a delay in effectuating service of process within one hundred twenty (120) days of filing suit. . . .

We find that the circuit court did not abuse its discretion in finding good cause. Here, Respondent had informed Mr. Reilley's then-counsel of the suit and was trying to determine if counsel would accept service of process, Respondent knew the location of Mr. Reilley, and Mr. Reilley knew of the lawsuit. We believe that the pre-120 day notice Petitioners enjoyed, coupled with the short period in which the service exceeded 120 days and the complete lack of prejudice to Petitioners substantiate the good cause finding by the circuit court. Indeed, had Respondent's initial complaint been dismissed, Respondent would simply have refiled the exact same complaint. Of course, at the time the motion to dismiss was denied, nearly seven years had passed since the motion was filed. By that time, according to the docket sheet, significant litigation had already transpired in the matter. The parties and the circuit court had already expended significant resources. At that point, any prejudice to Petitioners had been attenuated by Petitioners' full participation in almost seven years of litigation. Accordingly, we affirm the circuit court's finding that Respondent had good cause for the delay in service.

B. Statute of Limitations

There is no dispute that the two later flooding events of June 17, 2009, and June 5, 2010, fell within the applicable statute of limitations. The question raised by Petitioners is whether the earlier flood events of September 17, 2004, and February 1, 2008, fell outside the statute and were time-barred. The statute of limitations applicable to this action provides:

11

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

W. Va. Code § 55-2-12 (1923). Clearly, both the September 17, 2004, flood event and the February 1, 2008, flood event occurred more than two years prior to the filing of the complaint on September 2, 2010. The question thus becomes whether the continuing tort doctrine applies to each discrete flood event, thereby tolling the statute of limitations.[6]

----

[6] Respondent argues that Petitioners had a continuing duty to remove the obstruction from Little Grave Creek, thereby tolling the statute of limitations and points us to Syllabus Point 3 of *Riddle v. Baltimore & O. R. Co.*, 137 W. Va. 733, 73 S.E.2d 793 (1952), *holding modified by In re Flood Litig.*, 216 W. Va. 534, 607 S.E.2d 863 (2004), in support of that position:

One obstructing a natural water course by the construction of bridges, trestles or culverts thereover must provide against floods which should be reasonably anticipated in view of the history of the water course and natural or other conditions affecting the flowage of the stream; and though reasonable care may have been exercised originally in the construction of such bridges, trestles or culverts, if changed conditions and subsequent developments prove that the bridges, trestles or culverts, as originally constructed, have become inadequate to serve the waters of the stream during its normal flowage and during storms which may reasonably be anticipated, there is a duty to meet the changed conditions and failure to perform that duty will ground an action instituted by one injured by such neglect of duty for the recovery of damages resulting therefrom.

(continued . . .)

12

We have previously endeavored to apply the continuing tort doctrine in cases where damages occur over multiple events and this case causes us to once again delve into issues raised by this Court's prior opinions in *Handley v. Town of Shinnston*, 169 W. Va. 617, 289 S.E.2d 201 (1982), *Hall's Park Motel, Inc. v. Rover Construction, Inc.*, 194 W. Va. 309, 460 S.E.2d 444 (1995), and *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002). The *Graham* decision contains a detailed discussion of *Handley* and *Hall's Park Motel*, which we do not need to repeat here. *See Graham*, 211 W. Va. at 476-7, 566 S.E.2d at 613-4. In *Handley*, this Court found that the continuing tort theory applied to a leaking water line that caused continuous damage. *See id.*, 169 W. Va. at 619-20, 289 S.E.2d at 202-3. Conversely, in *Hall's Park Motel* this Court rejected an application of the continuing tort doctrine in finding that periodic construction was a "discrete and completed act of negligent commission, not a continuing negligent act of omission." *Id.*, 194 W. Va. at 313, 460 S.E.2d at 448. We held in that case that, "[w]here a plaintiff sustains a noticeable injury to property from a traumatic event, the statute of limitations begins to run

Syllabus Point 3, *id.* However, we note that the facts in *Riddle* do not support the concept of an unlimited period for which a plaintiff may look back and seek damages. In *Riddle*, although flooding events caused by the obstruction of the natural water course occurred on a semi-routine basis, prior actions were brought to recover for earlier events. *See id.*, 137 W. Va. at 745-6, 73 S.E.2d at 800. The damages sought by plaintiffs were limited to those that were incurred during the last flood event, which occurred during the applicable statute of limitations. *See id.*

and is not tolled because there may also be latent damages arising from the same traumatic event." Syllabus Point 2, *id.*

Finally, in *Graham*, in a matter decided at the summary judgment stage, this Court concluded the traumatic event allowing the tolling of the statute of limitations was the failure to "take action with regard to correcting the alleged inadequacies of [a storm water infiltration system that caused] continuing injuries to" plaintiffs. *Graham*, 211 W. Va. at 477, 566 S.E.2d at 614. Since *Graham*, however, we have found that the statute of limitations was not tolled in a situation where the plaintiff was positing a continuing duty on the part of the defendant:

> We have previously concluded that "the concept of a continuing tort requires the showing of repetitious, wrongful conduct . . . [m]oreover a wrongful act with consequential damages is not a continuing tort." *Ricottilli v. Summersville Mem. Hosp.*, 188 W. Va. 674, 677, 425 S.E.2d 629, 632 (1992). Further, even "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Syl. Pt. 2, *Roberts v. W. Va. Am. Water*, 221 W.Va. 373, 655 S.E.2d 119 (2007).
>
> . . . .
>
> Petitioners also argue on appeal that the circuit court erred in determining that no continuing breach of duty existed, which would have served to toll the statute of limitations. They contend that because respondent has "never gone in and repaired [the] damage it caused by burying car parts and timber," it violated a continuing duty to petitioners and created a "new tort daily." According to petitioners, because respondent's negligence is a continuing breach of duty causing a continuing injury, the statute of limitations does not begin to run until the date of the last injury.

14

The record on appeal likewise does not support petitioner's contention that a continuing breach of duty existed. We have previously determined that where

> the cause of the injuries was a "discrete and completed act of negligent commission, not [ ] a continuing negligent act of omission" . . . "the statute of limitations begins to run and is not tolled because there may also be latent damages arising from the same traumatic event."

*Graham v. Beverage*, 211 W.Va. 466, 476–77, 566 S.E.2d 603, 613–14 (2002).

*Ziler v. Contractor Servs., Inc. of W. Va. (Conserv)*, No. 16-0269, 2017 WL 1347714, at *2–3 (W. Va. Apr. 10, 2017) (memorandum decision). As was the case in *Ziler* and *Hall's Park Motel*, the evidence of record shows that there were four discrete traumatic events that caused injury to Respondent, rather than a continuing event stemming from a breach of duty. "In an action for the recovery of damages to real estate caused by the occasional, intermittent and recurring encroachment upon such real estate of dirt, rock and debris from an embankment on adjoining land, the damages recoverable are temporary, not permanent, in character." Syllabus Point 5, *Oresta v. Romano Bros.*, 137 W. Va. 633, 634, 73 S.E.2d 622, 623 (1952). Because the flooding events causing damages were occasional, intermittent, and recurring, they were temporary in nature. In such cases we have stated that the damages a plaintiff may recover is limited to damages that fall within two years prior to the filing of the complaint. *See Taylor v. Culloden Pub. Serv. Dist.*, 214 W. Va. 639, 647 n. 21, 591 S.E.2d 197, 205 n.21 (2003). Thus, the circuit court erred in denying Petitioners' motion for summary judgment on the statute of limitations issue. The statute

15

of limitations was not tolled and the damages caused by the September 17, 2004 and February 1, 2008 flood events are time-barred.

C. Proximate Cause

Respondent alleged in its complaint that the construction of the embankment and bridge carrying Duck Lane by Mr. Reilley Petitioners' were the proximate cause of the damages to Respondent's property. Petitioners argue that Respondent failed to introduce evidence at trial establishing proximate cause. In reviewing the trial record, ample evidence that the embankment and bridge carrying Duck Lane impeded the flow of Little Grave Creek proximately causing Respondent's damages was placed before the jury. Syllabus Point 1 of *Mays v. Chang*, 213 W. Va. 220, 579 S.E.2d 561 (2003) defines proximate cause:

> "The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred." Syllabus Point 5, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds, State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983).

Syllabus Point 1, *id*.

Several fact witnesses testified that they observed Little Grave Creek overflow its banks and that the flooding began at Duck Lane's embankment and bridge. Robert Montgomery, who was the head baseball coach at John Marshall High School from 1975 – 2017, testified that he saw water hit the bridge and embankment and back up on to the baseball field in 2008, 2009, and 2010. Both Sabrina Duckworth and Roger Simmons

16

also testified as to observing the flow of water during the 2008, 2009, and 2010 flood events as the water encountered the bridge and embankment and backed up on to the baseball field.

Additionally, Respondent's expert, Michael Kerns, clearly testified that the cause of the flood events on Respondent's property was the Duck Lane embankment and bridge:

> Q: You would expect, because the embankment sits in the floodway, that, for a heavier rain event the embankment's going to cause – obstruct the flow and cause more water to impound on the board's property as opposed to a five year rain event .
>
> A: Yes.
>
> . . . .
>
> Q: The analysis you ran, the data you compiled, the things you investigated, is it – it is your opinion that the Reilley bridge and embankment caused additional water, raised the flood elevations, caused additional water to be impounded upon the board's property?
>
> A: Yes.

Mr. Kearns' testimony was based upon modeling of the Little Grave Creek Watershed *without* the bridge and embankment and modeling of the creek *with* the bridge and embankment. He opined that flooding was caused by large amounts of sediment that had been deposited in the streambed because the flow of the stream was obstructed by the embankment and bridge carrying Duck Lane. According to Mr. Kearns, this limited the amount of water that the stream could contain at peak flow, which, in turn, caused the water

17

to leave the banks of Little Grave Creek and flood Respondent's property.  Further, there was no dispute that the embankment and bridge were in place prior to the 2008 flood event.  Indeed, the jury could infer that the embankment and bridge caused Little Grave Creek to back up and flood the Respondent's property based upon the expert's testimony and the observations made by the fact witnesses.[7]

### D.  Injunctive Relief

---

[7] In its reply, Petitioners cite this Court's holding in *In re Flood Litigation*, 216 W. Va. 534, 607 S.E.2d 863 (2004):

> Where a rainfall event of an unusual and unforeseeable nature combines with a defendant's actionable conduct to cause flood damage, and where it is shown that a discrete portion of the damage complained of was unforeseeable and solely the result of such event and in no way fairly attributable to the defendant's conduct, the defendant is liable only for the damages that are fairly attributable to the defendant's conduct. However, in such a case, a defendant has the burden to show by clear and convincing evidence the character and measure of damages that are not the defendant's responsibility; and if the defendant cannot do so, then the defendant bears the entire liability. To the extent that our prior cases such as *State ex rel. Summers v. Sims,* 142 W.Va. 640, 97 S.E.2d 295 (1957); *Riddle v. Baltimore & O.R. Co.,* 137 W.Va. 733, 73 S.E.2d 793 (1952), and others similarly situated held differently, they are hereby modified.

Syllabus Point 10, *id.*  However, we do not believe this case supports Petitioners' position because *In re Flood Litigation* would require Petitioners to show by clear and convincing evidence the "character and measure" of damages for which they are not responsible.  The record before the circuit court does not demonstrate that Petitioners met this burden.

18

Count six of the Amended Petition sought injunctive relief requiring the removal of the embankment and bridge carrying Duck Lane, pursuant to West Virginia Code § 53-5-4 (1923), which provides that "[e]very judge of a circuit court shall have general jurisdiction in awarding injunctions, whether the judgment or proceeding enjoined be in or out of his circuit, or the party against whose proceeding the injunction be asked reside in or out of the same." The amended complaint sought injunctive relief on three causes of action – private nuisance, violation of riparian rights, and continuing trespass. However, the circuit court's order granting injunctive relief contained no findings of fact or conclusions of law demonstrating that Respondent had established the elements necessary to be awarded injunctive relief.

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

*W. V. R. C. P.* 65. Here, the circuit court's final order merely states:

> In addition to the arguments of counsel, the Court incorporates the evidence introduced at and accepts the findings of the Jury in its Verdict from the trial of the damages phase of the case where the Jury found that the [Petitioners] have, in fact, placed obstructions in the stream channel, drainageway[,] and floodway of Little Grave Creek that cause water to impound upon the upstream property of the [Respondent]. Based upon the trial evidence and Jury Verdict finding that the [Petitioners] have obstructed the flow of Little Grave Creek, the [c]ourt finds as a matter of law under each of the alternative theories of continuing trespass, violation of

19

riparian rights[,] and nuisance, that the [Respondent] is entitled to entry of an [o]rder directing that the obstructions be removed or abated and that the stream channel, drainageway[,] and floodway of Little Grave Creek be remediated.

It appears that the circuit court found that the evidence that supported the jury verdict applied to the injunctive claims. However, the circuit court's failure to make the requisite findings of fact and conclusions of law to support an award of injunctive relief leaves this Court without the ability to meaningfully review the circuit court's ruling. We have previously held that circuit courts are required to make findings of fact and conclusions of law to issue an injunction:

> "After an evidentiary hearing on a complaint for a permanent injunction, a trial court is required to make a finding of fact and conclusion of law under Rule 52 of the West Virginia Rules of Civil Procedure, and findings and conclusions also should be made upon ruling on a motion to dissolve an injunction in order to assist appellate courts in determining whether there is a legitimate area for state regulation by injunction." Syl. pt. 4, *United Maintenance and Manufacturing Co. v. United Steel Workers of America,* 157 W.Va. 788, 204 S.E.2d 76 (1974).

Syllabus Point 2, *West v. Nat'l Mines Corp.*, 175 W. Va. 543, 336 S.E.2d 190 (1985). Here, the injunction request was properly before the Court, without a jury. Thus,

> "Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance." Syllabus Point 1, *Commonwealth Tire Co. v. Tri–State Tire Co.,* 156 W.Va. 351, 193 S.E.2d 544 (1972).

20

Syllabus Point 1, *Clark Apartments ex rel. Hood v. Walaszczyk*, 213 W. Va. 369, 582 S.E.2d 816 (2003). Because the circuit court failed to follow the mandate of Rule 52(a), our review of its order granting injunctive relief is substantially hindered because we are unable to ascertain the circuit court's reasoning for doing so. *See id.*, 213 W. Va. at 371, 582 S.E.2d at 818. Accordingly, we remand this matter with directions for the circuit court to enter an order that complies with the mandate of Rule 52(a).

## IV. CONCLUSION

For the foregoing reasons, we affirm the circuit court's rulings that there was good cause to extend the time for service of process and that there was ample evidence of proximate cause offered during trial. We reverse and remand for proceedings consistent with this opinion, including a recalculation of damages in light of our conclusion that the statute of limitations barred Respondent's claims relating to the September 17, 2004, and February 1, 2008, flood events, and for entry of an order that includes findings of fact and conclusions of law in support of the award of injunctive relief.

Affirmed, in part, reversed, in part, and remanded.